264 So.2d 372 (1972)
George E. SIAU, Individually and As Administrator of the Estate of His Minor Son, William C. Siau, Plaintiffs-Appellants,
v.
RAPIDES PARISH SCHOOL BOARD, Defendant-Appellee.
No. 3862.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1972.
Rehearing Denied June 28, 1972.
Writ Refused September 27, 1972.
*373 Gravel, Roy & Burnes, Alexandria, Chris J. Roy, Alexandria, of counsel, for plaintiffs-appellants.
Gus Voltz, Jr., Asst. Dist. Atty., Alexandria, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
MILLER, Judge.
Plaintiff William C. Siau impaled himself by running into a javelin. The trial court dismissed the suit by George E. Siau (in his own and his son's behalf) finding no negligence by defendant Rapides Parish School Board. We affirm the result.
The accident occurred on the Bolton High School football field on April 6, 1966 during the third school period of the day. William Siau, a tenth grade student, was *374 assigned to the physical education class which was running an 880 yard track event.
The north-south oriented football field is grass covered with a narrow bordering grassy infield. Surrounding the football field and infield is a four foot chain link fence. Around the outer edge of this fence is a 440 yard cinder track. Two sets of stands were situated in this area, both on the outer edge of the tract. One stand was on the west side and one on the east side. Around this entire area was an eight foot chain link fence. There were four gates in the four foot fence, two gates at the north end (leading to the school) and one in front of the east stands and one in front of the west stands. The last two mentioned gates were at the football field's 50 yard line.
During the first part of the physical education class, Ronnie Goff, a Bolton High student had been practicing with the javelin behind the east stands. When Goff completed his workout with the javelin he walked under the east stands with the javelin. As he entered the east gate of the four foot fence, he placed the javelin in the ground several feet north of the gate and about four feet west of the four foot fence. The javelin was angled into the ground so that the tip of it was approximately three feet above the ground. The javelin was out of the pathway for anyone crossing through the east gate onto the field. Goff then proceeded across the field and through the west gate of the four foot fence which put him on the track at the starting point for the race which Goff and all students were required to run. This point was about even with the 50 yard line of the football field.
Siau had not dressed out for the race and because of this fact, was not permitted to run the events. Students not properly attired were instructed to remain in the west stands. Upon learning that he would not be able to play softball without running, Siau came out of the west stands, crossed the starting point on the track and proceeded through the gate onto the grassy area next to the football field. He assumed a sprinting stance just inside the fence on the infield. He was facing south as were the properly attired physical education participants who were on the track. There is some evidence that a student coach told plaintiff he didn't care if Siau ran on the infield because it would not count due to Siau's failure to dress out. However, when Siau started to run, the record shows that one of the regular coaches spotted him and yelled at him to stop. Disregarding this, Siau yelled that he would run anyway. It was established that no track events in the physical education program were ever run on the grass inside the fenceone reason being that the distance was not an accurate 440 yards. The only physical education activities conducted on the grass were the discus and shot put, both of which were carried out on the north end of the field. There was an occasional touch football game on the field. None of these events were permitted on this date. Students were allowed to walk across the field to reach the west side of the track where all races were started.
Siau ran along the inside of the four foot fence ahead of the participants on the track. At some point before reaching the east gate, plaintiff testified that he turned his head to the right and rear to observe the students on the track. While looking to the side, he ran past the gate and into the javelin. He never returned his vision to the direction in which he was running although he was running at top speed. Also, during the entire time he was running, he was not wearing his glasses. It was established that without glasses he could not distinguish the features of his parents faces at a distance of 20 to 25 feet.
On these facts we have concluded that Siau was negligent and that his negligence was a proximate cause of the accident. We pretermit consideration of the question of negligence on the part of the Rapides Parish School Board.
*375 Negligence is a failure to observe or do something that one ought to have observed and done, and would have done or noticed with ordinary care. Plaintiff is held to have seen that which he should have seen. Although plaintiff was not required to keep his eyes glued to the pathway, he was required to look sufficiently well to see if his path was clear. Bamburg v. Standard Oil Co. of Louisiana, 199 So. 411, 412 (La.App. 2 Cir. 1940).
While one is not required to look for hidden dangers, he is nevertheless bound to proceed with his eyes open and to observe his course to see what is in his pathway. Spinks v. General Fire and Casualty Company, N.Y., 175 So.2d 339, 341 (La.App. 2 Cir. 1965).
One must see those defects in his pathway which may be discovered by a reasonably prudent person in the exercise of ordinary care. Turner v. Aetna Casualty and Surety Company, 175 So.2d 304, 306 (La.App. 2 Cir. 1965); see also Prosser, Law of Torts, § 32 p. 160.
In Gambino v. Lubel, 190 So.2d 152, 156 (La.App. 4 Cir. 1966), writs refused, 249 La. 834, 191 So.2d 639, the court dealt with the evaluation of conduct of a physically disabled or impaired person. It was held that:
"An afflicted person is held to the standard of care of the ordinarily prudent man which the law has established for everybody. To attain this norm he may have to put forth a greater effort for his own safety, and the safety of others, than one not disabled . . ."
See also Prosser, supra, § 32, p. 155.
Plaintiff was running in an area he knew was not prepared or used for such a purpose. He had been told to stop. He knew that he was not permitted to participate in the race because he was not properly attired. His failure to look and observe the area in his direction of travel coupled with the fact that he made no extra effort commensurate with his impaired vision to facilitate the safe travel of his route of movement, makes his conduct in this case negligent. Besides the fact that he should not have been running on the grass, he should have been observing his path of movement. This observation should have been intense enough and conducted at a speed slow enough to enable him to sufficiently and effectively employ his impaired vision to observe and avoid obstacles. Only in such manner could he have discharged his duty of reasonable care under the circumstances of his partial blindness.
Having found negligence we find that such negligence was the proximate cause of the injury. Although the javelin was similar in color to the fence, it was about four feet from the fence. Since plaintiff was traveling parallel to the fence and therefore facing the javelin, but not the fence, the color of the fence could not have been a deceiving or camouflaging backdrop. The fence formed no backdrop at all.
Plaintiff argues that the only area of the javelin viewable to Siau as he approached was the tip of the chrome type javelin. We do not agree. Plaintiffs assume that Siau's vision (if he had used his vision and he did not) would at no time be to the right or left of the javelin so as to expose its shaft to view. It also assumes that only the point and no part of the shaft would be visible to a person approaching in a direct line with the javelin. This is a mechanical impossibility. At any angle, the shaft would be visible for some period of time, first the underside and then the upperside.
If Siau had exercised the care required under the circumstances (he was running in an area which races were never run with such limited vision that he should have proceeded at a very slow speed), he could have and should have observed and avoided the javelin.
*376 Since Siau's negligence was a proximate cause of the accident, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiffs.
Affirmed.