408 So.2d 1174 (1982)
Frances M. HEAD, Plaintiff-Appellant,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, et al., Defendants-Appellees.
No. 8563.
Court of Appeal of Louisiana, Third Circuit.
January 11, 1982.
Writ Denied March 12, 1982.
*1175 Young & Burson, Mark Terrance Hoychick and Harry Kent Aguillard, Eunice, for plaintiff-appellant.
Gachassin & Capretz, Carey Tom Jones and Nicholas Gachassin, Lafayette, for defendants-appellees.
Before CULPEPPER, FORET, CUTRER, SWIFT and LABORDE, JJ.
FORET, Judge.
Frances Head (Plaintiff) brought this tort action to recover damages for personal injuries sustained by her in a fall on the premises of a hospital while exiting therefrom. Hospital Service District # 1 of St. Landry Parish, Louisiana d/b/a Moosa Memorial Hospital (the Hospital), and its general liability insurer, St. Paul Fire & Marine Insurance Company (St. Paul), were named defendants.
The trial of plaintiff's action resulted in a judgment by the trial court in favor of defendants and against plaintiff dismissing her action. Plaintiff brings this devolutive appeal from that judgment and raises the following issues:
(1) Whether the trial court committed manifest error in finding that plaintiff had failed to prove that her injuries were caused by any negligent conduct of the defendant-Hospital;
(2) Whether the trial court committed manifest error in finding that plaintiff failed to prove the existence of any defect in the entranceway to the Hospital, where she fell;
(3) If so, did the trial court commit manifest error in finding that plaintiff had failed to prove that her injuries were caused by any such alleged defect;
(4) Whether the trial court erred in allowing an expert in the fields of architecture and civil engineering to render an opinion as to the safeness of the entranceway to the Hospital;
(5) Whether evidence of safety standards existing at the time of construction of a building or thing is admissible in a case based on strict liability under LSA-C.C. Articles 2317 and 2322 and,
(6) What is the amount of damages that plaintiff should recover from defendants if this Court finds that they are liable to her?
Because of our decision herein finding defendants liable to plaintiff on the basis of negligence, we pretermit any discussion of issues 2-5. We will make a determination as to quantum.

FACTS
Plaintiff was 71 years old at the time that the accident occurred on December 11, 1978. She was a resident of West Monroe and had come to Basile to care for her daughter, Montez Estes, (who had undergone surgery) and the daughter's family. Plaintiff's daughter was hospitalized in the Moosa Memorial Hospital in Eunice, where the surgery had been performed.
Plaintiff went to the Hospital early on the day of the accident to stay with her daughter. She left somewhere between 5:30 P.M. and 6:00 P.M. and was accompanied *1176 by Orena Estes, her daughter's mother-in-law, and Mrs. Estes' grandson, Mark Estes. Plaintiff and her two companions exited from the Hospital via the front entranceway. That entranceway slopes downward toward a "roll over" curb[1]. Plaintiff fell when she stepped onto the curb, which separates the entranceway from a circular driveway in front of the Hospital's building.
Plaintiff sustained a fracture of her left hip and was immediately taken to the emergency room of the Hospital. She received initial treatment there and was then admitted. Dr. R. E. Landreneau performed an open reduction on plaintiff's left hip the next day and she remained in the Hospital until she was discharged on January 5, 1979. She was then taken to the Basile Care Center, a nursing home.
Plaintiff returned to the Hospital on January 16, 1979, complaining of pain in her left hip. Dr. Landreneau referred plaintiff to Dr. R. Luke Bordelon in Opelousas, and she was admitted to Opelousas General Hospital on January 17, 1979. X-rays showed that the fracture of plaintiff's left hip was displaced. A second operation was performed on plaintiff in which a metal prosthesis[2] was used to replace the ball of her hip joint. Plaintiff remained in Opelousas General Hospital until her discharge on February 16, 1979.
Plaintiff then went to her daughter's home in Basile. She fell once more on February 23, 1979, and suffered an impacted or compression fracture of her left wrist. She was taken to the emergency room of the Moosa Memorial Hospital, where a cast was placed on her wrist, and released.
Plaintiff instituted this action on December 7, 1979, alleging that as she walked out of the Hospital via the front entranceway a car approached with its headlights on, temporarily blinding her. She then lost her balance on the sloping walkway and fell on the concrete surface causing her to suffer the injuries complained of. She further alleged that her injuries were caused solely by certain negligent acts and/or omissions of the Hospital. Defendants denied plaintiff's allegations of negligent conduct on the part of the Hospital or that such conduct was the sole, proximate cause of her injuries. Defendants also plead the affirmative defense of contributory negligence on the part of plaintiff.

HOSPITAL'S ALLEGED NEGLIGENCE
Plaintiff contends that the sole, proximate causes of her injuries were the following alleged negligent acts and/or omissions of the Hospital: constructing and maintaining an unsafe entrance-exit to be used by the public; failing to place warning signs informing the public of the uneven walking area in the area of the entrance-exit ramp; providing a driveway for motor vehicles in an area where their headlights may blind persons exiting through the front main entrance, or else will create a dangerous hazard by passing too close to one using the entrance; failing to provide some sort of supportive device for handicapped, elderly, or other persons requiring such supports, such as handrails or a doorman to assist those individuals requiring such help; and, failing to properly inspect, maintain, and supervise the front entrance-exit. Plaintiff's claim is based on the provisions of LSA-C.C. Articles 2315 and 2316.
The first inquiry in making a determination of liability under these articles is whether any causal relationship exists between the harm suffered by plaintiff and the Hospital's alleged negligent conduct. Thus, if plaintiff can show that she probably would not have suffered the injuries complained of but for the Hospital's conduct, she has carried her burden of proof relative to cause-in-fact. Shelton v. Aetna *1177 Casualty & Surety Company, 334 So.2d 406 (La.1976); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Vidrine v. Missouri Farm Association, 339 So.2d 877 (La.App. 3 Cir. 1976), writ denied, 342 So.2d 216 (La.1977); Stewart v. Gibson Products of Natchitoches Parish, Louisiana, Inc., 300 So.2d 870 (La.App. 3 Cir. 1974).
The trial court found that plaintiff failed to prove that her fall was caused by "any negligence of the defendant, Moosa Memorial Hospital". Plaintiff argues that the trial court committed manifest error in making this finding.
In resolving the question of whether an act or acts of a defendant were a cause-in-fact of the harm suffered by a plaintiff, we make no inquiry as to whether the act or acts were unlawful or negligent. We determine only whether they were a substantial factor without which the accident would not have occurred, i.e., whether they had some direct relationship to the accident. Laird v. Travelers Insurance Co., 263 La. 199, 267 So.2d 714 (1972); Pierrotti v. Associated Indemnity Corp., 399 So.2d 679 (La. App. 1 Cir. 1981).
The evidence shows that the entranceway where plaintiff fell consisted of a sloping concrete walkway that ended at a curb. Both the walkway and the curb were covered by a dark-colored mat that was approximately six feet wide. The walkway sloped downward at an angle of 2.07 degrees from horizontal for a distance of 1.1 feet beginning at the doors to the Hospital's building. The slope then increased to an angle of 6.7 degrees from horizontal for a distance of 3.4 feet ending at the curb. The curb itself sloped downward at angles of 19.95 degrees from horizontal for a distance of .6 feet and 22.8 degrees from horizontal for a distance of .35 feet. The curb ended at the circular driveway.
Plaintiff contends that she fell because the Hospital failed to place signs warning of the uneven walking surface and concealed the presence of the curb with the mat. Plaintiff testified that she and her two companions walked out of the double doors in front of the Hospital's building and "just as I got at the end of the slope or whatever you call it, it slopes down, I started to step down and it seems like I just there wasn't a step there and I just went down". Plaintiff, at the request of counsel, marked a photograph of the entranceway to show where she fell. She indicated that she fell at the end of the walkway where the curb is located. Mrs. Estes also testified that plaintiff fell at that spot. The photographs, together with the testimony of a number of the witnesses, indicate that there were no handrails in this area. Plaintiff argues that all of the above were substantial factors without which the accident would not have occurred.
Defendants, on the other hand, contend that the mat was placed over the walkway and curb for safety. They note that the curb was painted a bright yellow and could be clearly seen on each side of the mat. Douglas Longman, the Administrator of the Hospital, testified that he had no personal knowledge of anyone having fallen on the entranceway in the 18 years that he has been affiliated with the Hospital. However, he did admit that someone could have fallen without injuring himself and, as a result, he may have received no notification of the accident.
We find that plaintiff has proven, by a preponderance of the evidence, that she probably would not have suffered the injuries complained of but for the Hospital's conduct and that the trial court's finding to the contrary constitutes manifest error.
A finding that the Hospital's conduct was a cause-in-fact of plaintiff's injuries, however, does not, of itself, establish liability. In addition, we are required to ascertain whether the Hospital breached a legal duty to protect against the particular risk involved. Shelton v. Aetna Casualty & Surety Co., supra; Smolinski v. Taulli, 276 So.2d 286 (La.1973); Hill v. Lundin & Associates, Inc., supra. In making this determination, the following inquiries must be made:
(1) What, if any, duty was owed by the Hospital to the plaintiff?
*1178 (2) Was there a breach of this duty?
(3) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
Shelton v. Aetna Casualty & Surety Co., supra; Thomas v. Hanover Insurance Company, 321 So.2d 30 (La.App. 3 Cir. 1975).

I. DUTY OWED
The first inquiry is what, if any, duty was owed by the Hospital to plaintiff. Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La. 1979), stated at page 1047 that:
"The owner and operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. In determining a particular defendant's duty consideration should be given to the nature of the facility and the dangers presented by it. In considering a defendant's duty to a particular person, consideration should be given to the person's age, maturity, experience, familiarity with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person. The duty would be greater to a person of young age and immature judgment. It would be lesser to a person with experience, knowledge and familiarity with the premises."
The facility that we are concerned with is a hospital which, by its very nature, will be used frequently by the infirm, the feeble, and the elderly. Because of their age and/or infirmities, it is particularly difficult for these persons to safely move about. We believe that a hospital owes a duty to such persons to warn them of the existence of any obstacles or dangers, which may present a hazard to them, as they move about the hospital, or in and out of it. Defendant-Hospital owed this duty to plaintiff.

II. BREACH OF DUTY
The next inquiry is whether there was a breach of this duty. A. J. Scardino, Jr., who was accepted by the court as an expert in the field of health and safety engineering, testified on behalf of plaintiff. He made a physical examination of the entranceway and photographed it. He also reviewed certain drawings made by a civil engineer which showed the dimensions of the entranceway and the angles noted above. He then compared the physical characteristics of the entranceway with the guidelines set forth in a number of safety codes or manuals dealing with buildings and the entrances and exits to them.[3] He opined that the entranceway "did not meet the minimum safety standards and was inherently unsafe".
Scardino testified that his opinion was based on a number of different factors. First, whenever a door opens outward, as do the double doors at the entrance to the Hospital's building, there should be a level surface or landing which extends a minimum of three feet past the end of the door. Second, any ramp or slope to an entrance that is to be used by the elderly or the handicapped should not exceed 2.85 degrees from horizontal. Third, the angle of the slope or ramp should be constant or uniform along its entire length. Scardino stated that the purpose of these guidelines was "to prevent individuals from falling and not encountering a sudden surprise or rapid stepdown". He also noted that the guidelines provide that curbs should be brightly colored to aid those with poor vision. Here, the curb was colored a bright yellow, but it was covered by the dark-colored mat for the width of the entranceway.
Clifton Lasseigne, who was accepted by the court as an expert in the fields of architecture and civil engineering, testified *1179 on behalf of defendants. He stated that prior to 1962, the entranceway in question was much longer than it presently is. In that year, he and his firm did the architectural work for the construction of an addition to the Hospital's building. That addition enclosed all but six feet of the area formerly occupied by the entranceway and this became the Hospital's present day lobby. Lasseigne testified that the primary guidelines for designing hospitals today are found in the Life Safety Code, which has been adopted by the State Fire Marshal's Office.
Lasseigne admitted that he had never taken any courses in safety engineering nor had he done any accident reconstruction work as a professional. He testified that, at any entrance to a building consisting of a flat walkway, the walkway should be slightly inclined so that water would not accumulate and run under the door. He opined that the sloping walkway at the entrance to the Hospital's building is not a ramp and that the guidelines of the Life Safety Code dealing with ramps are inapplicable. However, he did admit that the closer an entranceway is to horizontal, the safer it is for pedestrians to walk in and out. He also admitted that he would not put a curb at the end of a ramp with the qualification that he did not consider the entranceway to the Hospital to be a ramp.
Lasseigne testified that it was "good practice" to paint curbs to increase their visibility to people attempting to cross them. He acknowledged that the curb at the end of the entranceway was covered by the mat and that it would be better if no part of it were covered. He did not think that the entranceway to the Hospital would cause some persons to lose their balance because of the fact that there was a relatively slight difference in the angle of slope of different portions of the walkway. However, he did state that a person, who did not know of the presence of the curb, could lose his balance when attempting to cross it. He testified that there were no handrails along the entranceway because it was felt they were not needed. The evidence indicates that there were no signs warning the general public of the existence of the curb.
We find that the defendant-Hospital, by failing to warn of the existence of the curb and concealing its presence with a dark mat, breached its duty of exercising reasonable care for the safety of the elderly (plaintiff) on its premises, and exposed them (her) to unreasonable risks of injury or harm. As was noted in Morgan v. Hartford Accident & Indemnity Co., 402 So.2d 640 (La.1981), a case with facts and circumstances similar to those in the action before us[4], on pages 642 and 643:
"The owner of a building, although he does not have a duty to insure against the possibility of all accidents on his premises, does have a duty to act reasonably in view of the probability of injury to others. Shelton v. Aetna, 334 So.2d 406 (La.1976). In the instant case the eight inch drop between the two rooms presented an unexpected condition and, because of the identical texture and color of the floors in both rooms, a condition that was difficult to discern for the unwary patron. Thus it could easily be concluded that one might trip and fall because of this unexpected drop. The precautionary measure of either warning of the drop or highlighting the area would have been virtually costless and would not have interfered with the use of *1180 the passageway. Therefore, failure to take such a precautionary measure was unreasonable when balanced against the possibility of accidents resulting from the drop off, and it was a breach of the defendant's duty to its invited guests."

III. SCOPE OF PROTECTION
The last inquiry is whether the risk encountered by plaintiff and the harm caused her were within the scope of protection afforded by the duty breached. We conclude that they were. Certainly, the defendant-Hospital's duty of exercising reasonable care for the safety of the elderly (plaintiff) on its premises afforded protection to plaintiff against the risk of encountering hidden obstacles and of falling as a consequence thereof. Thus, we find that defendants are liable to plaintiff for damages resulting from the personal injuries she suffered.
Defendants contend that if this Court should find them liable to plaintiff on the basis of negligence, recovery should be denied because plaintiff was guilty of contributory negligence. Defendants base their contention solely on evidence which indicated plaintiff may have been talking to Mrs. Estes as they were leaving the Hospital.
The burden of proving contributory negligence is on the defendants and the test is the same as that for proof of negligence, i.e., did the person's conduct fall below the standard to which a person should conform for his own safety and protection; the standard of a reasonable man in like circumstances. Morgan v. Hartford Accident & Indemnity Co., supra. We fail to see how the mere fact that a person is talking to another while walking can constitute contributory negligence on the part of the person doing the talking. Certainly, this isn't conduct which falls below the standard to which a reasonable person should conform for his own safety and protection. We find that defendants failed to prove that plaintiff was guilty of contributory negligence.
We note that an alternative, or perhaps concomitant, basis of finding defendants liable to plaintiff is strict liability under LSA-C.C. Article 2317. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981) explained at pages 728 and 729 that:
"An injured party seeking damages under art. 2317 need not prove negligence, that is, that any particular act or omission on the part of the defendant caused his injuries. He must only prove that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defect, that is, that it occasioned an unreasonable risk of injury to another, and that his injury was caused by the defect. Once these elements are proven, the custodian can escape liability only by showing that the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force."
It is obvious that the entranceway was in the care or custody of the defendant-Hospital. Further, we have found that its condition at the time of the accident was such that it presented an unreasonable risk of injury to others (a vice or defect) and that plaintiff's injury resulted from this condition. There was no evidence adduced by defendants to show that plaintiff's injuries were caused by her own fault, by the fault of a third person, or by an irresistible force.

QUANTUM
The evidence shows that plaintiff suffered severe physical pain for a period of a few weeks after being admitted to the hospital for treatment of her injuries. In addition, she also suffered severe physical pain for a few weeks after undergoing surgery for a second time at Opelousas General Hospital when the fracture in her hip became displaced. The notes of the physicians and nurses tending to her at these times, together with her medical records which show the frequent administration of narcotics for pain, attest to the severity of plaintiff's physical pain and suffering while hospitalized.
Plaintiff moved to Ruston in April, 1979, approximately four months after the accident, *1181 to live with her daughter, Janice Sawyer. Plaintiff then returned to see Dr. Albert Donald, her personal physician before the accident, for her medical complaints. She saw Dr. Donald after the accident in June, 1979 and approximately four to five times after that, but prior to trial. He testified that plaintiff never complained to him of suffering from any pain at any of these visits. There was no testimony from plaintiff or Mrs. Sawyer to the effect that plaintiff was continuing to suffer from physical pain related to her injuries.
Factors to be considered in assessing quantum for pain and suffering are the severity and duration thereof. Buckley v. Exxon Corporation, 399 So.2d 1225 (La.App. 3 Cir. 1981); Walker v. St. Paul Insurance Companies, 339 So.2d 441 (La.App. 1 Cir. 1976), on remand, 343 So.2d 251 (La.App. 1 Cir. 1977), writ denied, 345 So.2d 61 (La. 1977).
As for the mental anguish suffered by plaintiff, the evidence does indicate that she was a very active woman prior to the accident. However, as a result of her injuries, she has now become almost totally dependent on her daughter, Mrs. Sawyer, to care for her. Plaintiff testified more than once that in the period following her accident, while she was hospitalized, she had doubts about whether she would survive. She also testified as to the emotional strain which she has experienced because of the fact that she can no longer care for herself and must depend on others to do so. Her daughters also testified as to the tremendous change plaintiff has experienced in her lifestyle because of the accident.
In light of the above, we award plaintiff $50,000.00 for general damages.
Plaintiff seeks an award of $30,000.00 for past and future medical expenses associated with the treatment of her injuries. A stipulation was entered into by the parties whereby they agreed that plaintiff had incurred $18,077.63 in medical expenses prior to the trial of this action. Plaintiff contends that she will continue to incur medical expenses in the future for treatment. Two of the medical experts testified that a prosthesis, such as that placed in plaintiff's hip, has a limited lifetime of usefulness and must be replaced periodically. However, they also testified that because of plaintiff's advanced age, one could only speculate as to plaintiff's need in the future for such a replacement. There was medical testimony which indicated that the stress from the accident and resulting surgeries had weakened plaintiff's heart to the point where she is now required to take certain medication regularly for that condition. However, plaintiff failed to adduce any evidence to show what the expenses for such medication were likely to be in the future.
Awards will not be made for future medical expenses which may or may not occur in the absence of medical testimony that they are indicated and setting out their probable cost. Ainsworth v. State Farm Automobile Insurance Co., 399 So.2d 1242 (La.App. 3 Cir. 1981); Sikes v. McLean Trucking Co., 383 So.2d 111 (La.App. 3 Cir. 1980); Billedeaux v. Adams, 355 So.2d 1345 (La.App. 3 Cir. 1978). As was noted above, there was medical testimony that certain drugs, to be taken by plaintiff on a continuing basis, were indicated for the treatment of plaintiff's heart condition. However, there was no evidence presented to show what the probable cost of the drugs would be. We award plaintiff $18,077.63 for past medical expenses.
Finally, plaintiff contends that she should be awarded $7,995.51 for past and future loss of Supplemental Security Income (S.S.I.) benefits. She argues that she would have received a certain amount of these benefits if she had continued to live by herself. However, they have been drastically reduced because of the fact that plaintiff has moved into her daughter's home.[5] Plaintiff has cited us no authority, either statutory or in the jurisprudence, allowing the recovery of such benefits, and we can find none. We conclude that the plaintiff may not recover from defendants for the loss of such benefits.
*1182 For the above and foregoing reasons, the judgment of the trial court is reversed. Judgment is hereby rendered in favor of plaintiff and against defendants, awarding plaintiff $50,000.00 for general damages and $18,077.63 in special damages for a total award of $68,077.63.
All costs of this appeal and in the trial court are assessed against defendants-appellees.
REVERSED AND RENDERED.
SWIFT, J., dissents and assigns reasons.
CULPEPPER, J., dissents for the reasons assigned by SWIFT, J.
SWIFT, Judge, dissenting.
In reversing the judgment of the district court the majority has concluded principally that the trial judge's factual determination, that the walkway and rollover curb involved in this case were not defective or did not present an unreasonable risk of harm to persons using same, was clearly wrong. I cannot agree.
Unlike Morgan v. Hartford Acc. & Indemn. Co., 402 So.2d 640 (La.1981), where the plaintiff walked for the first time through an interior door separating a hallway and another room and tripped and fell because of an abrupt eight inch step down in the floor level at the door which was difficult to see, Mrs. Head walked at least four and one-half feet out of the building and down the gently sloping walkway before she fell at the rollover curb, apparently because she was not looking where she was going. This was at least the sixth time the plaintiff had used this entrance.
The rollover curb was painted yellow. There was a dark mat about six feet in width extending down the walkway and over the curb. However, the painted curb was plainly visible on either side of the mat and I am not convinced from the pictures that its presence was concealed by the mat to any extent. There is no indication that this location was not well lighted. Nor did Mrs. Head testify that she was unaware of and did not see the curbing because of the mat.
The plaintiff did not know whether an approaching car had anything to do with her fall and she did not remember whether or not she and the other woman behind her were talking.
The hospital administrator testified that to his knowledge no one had ever fallen at this entranceway in the 18 years he had been at the hospital. The lady accompanying Mrs. Head said she had used the entrance many times before and had never fallen there.
The testimony of two experts in regard to dangerous characteristics of the entrance was in conflict. Obviously, the trial judge was more impressed by the defendants' witness.
Although the plaintiff was 71 years of age at the time of the accident, she was not incapacitated in any way. Mrs. Head testified that she took care of her home and yard, went in and out of her house and up and down the steps of her church without assistance and did her own shopping in grocery stores and supermarkets. She wore glasses but said she had no problem seeing.
Although persons exiting the building were not required to keep their eyes glued to the pathway, the hospital could expect that they would proceed with their eyes open and observe what was ahead. Siau v. Rapides Parish School Board, 264 So.2d 372 (La.App. 3 Cir. 1972), writ denied 262 La. 1148, 266 So.2d 440 (La.1972).
The mere fact that an accident occurred does not create any inference that the entranceway was defective or created an unreasonable risk of harm to plaintiff or others. To the contrary, the fact that there were no previous falls in 18 years indicates that the entranceway and curbing presented no greater risk of injury than any other. Broussard v. Pennsylvania Miller's Mutual Insurance Company, 406 So.2d 574 (La.1981).
I am convinced that the trial judge's findings that the hospital was not negligent and that the doctrine of strict liability was inapplicable *1183 because the entranceway was not an unreasonable risk of harm were indeed supported by the record. Certainly they were not clearly wrong. Therefore, I respectfully dissent.
NOTES
[1] A "roll over" curb is designed to allow motor vehicles to pass over it without damaging their tires.
[2] The prosthesis consists of a metal ball with a spike on it. The spike is driven into the marrow cavity of the thigh bone and is bonded to the bone by a special glue. The metal ball is then placed in the hip socket and allows normal movement of the leg.
[3] These manuals or codes relied on by Scardino were: The Life Safety Code, published by the National Fire Protection Association; Accident Prevention Manual for Industrial Operations, published by the National Safety Council; Building Engineering and Systems Design; Time Saver Standards for Building Types; Best's Loss Control Engineering Manual; and, The Fire Protection Handbook, 13th Ed., published by the National Fire Protection Association.
[4] Morgan was a wrongful death and survival action brought by four of the decedent's children. Decedent was injured and later died from complications associated with her injuries, when she failed to notice an 8-inch stepdown between the hallway and one of the rooms of a church building. The stepdown was hard to notice because the floors in both the hallway and room were the same color. Morgan found defendant liable to plaintiffs both on the basis of negligence and strict liability. Defendant in Morgan was held to be strictly liable to plaintiffs under LSA-C.C. Art. 2317 because the court found that the 8-inch stepdown presented an unreasonable risk of injury to others, i.e., it was defective. Morgan also found that defendant was guilty of negligence, which resulted in injury and death to decedent, because it had failed to warn her of the presence of the stepdown.
[5] See Title XVI, § 1612(a)(2) of the Social Security Act.