427 So.2d 560 (1983)
Robert R. HOFFPAUIR, Sr., Individually and as Administrator for Jacquelynn Anne Hoffpauir, Minor, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendants-Appellants.
No. 82-549.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
Rehearing Denied March 22, 1983.
*561 F. Jefferson Millican, Jennings, for defendant-appellant-appellee.
Stephen P. Coco, Jennings, for plaintiff-appellee.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Robert W. Clements, Lake Charles, for defendant-appellee-appellant.
*562 Woodley, Barnett, Cox, Williams & Fenet, J.L. Cox, Lake Charles, for defendant-appellee.
Before DOMENGEAUX, FORET and DOUCET, JJ.
FORET, Judge.
Robert R. Hoffpauir, Sr. (plaintiff), individually, and as administrator of the estate of his minor child, Jacquelynn Anne Hoffpauir (Jacquelynn), brought this tort action to recover medical expenses incurred by him for the treatment of personal injuries suffered by Jacquelynn, when the automobile in which she was riding as a guest passenger collided with another vehicle. Plaintiff also sought to recover general damages on behalf of Jacquelynn.
Named defendants to plaintiff's action are: State Farm Mutual Automobile Insurance Company (State Farm), the automobile liability insurer of Tamela Gatte (Tamela), the driver of the vehicle in which Jacquelynn was riding; Allstate Insurance Company (Allstate), plaintiff's uninsured motorist (U/M) insurer; and, Randy J. Chaisson (Chaisson), the driver of the other vehicle[1].
The trial court, after trial on the merits, rendered judgment in favor of plaintiff, and against State Farm and Chaisson, in solido, said judgment against State Farm being limited to $52,000. Plaintiff was awarded the sum of $14,885.62 in special damages, and $350,000 in general damages as the administrator of Jacquelynn's estate[2].
Chaisson appeals from that judgment and raises the issue of whether the trial court erred in finding him negligent and liable to plaintiff.
State Farm also appeals from that judgment and raises the following issues:
(1) Whether the trial court erred in finding that both Tamela and Chaisson were guilty of negligence, which concurrent negligence was a cause of the accident;
(2) Whether State Farm would still be liable to plaintiff under both the liability and U/M coverages of the policy it issued Tamela's stepfather, if this Court should find no negligence on the part of Chaisson; and,
(3) Whether judgments under U/M coverage bear legal interest from the date of judgment, rather than the date of judicial demand.
Plaintiff answered the appeal and raises the issue of whether the trial court erred in failing to hold State Farm liable, in solido, with Chaisson for the full amount of the judgment.

FACTS
This action arises out of an automobile accident that occurred on January 12, 1979, in Jennings. Tamela and Jacquelynn were riding in an automobile owned by Tamela's step-father, Larry G. Moore (Moore), and insured by State Farm. They were traveling south on Louisiana Highway 26 (La. 26), when they approached the intersection of that highway with Eleventh Street. La. 26 is a four-lane highway at this point, and Tamela was driving in the inside lane, intending to make a left turn onto Eleventh Street. At the same time, Chaisson and two passengers in his automobile were traveling north in the inside lane of La. 26 as they approached the above mentioned intersection. Tamela attempted to execute a left turn onto Eleventh Street, but was struck broadside by the Chaisson vehicle. As a result of the accident, Jacquelynn suffered severe and permanent personal injuries. Plaintiff instituted this action alleging that the accident was caused by the *563 concurrent negligence of Tamela and Chaisson.

ALLEGED NEGLIGENCE OF CHAISSON
Chaisson contends that the trial court erred in finding that the accident was caused by the concurrent negligence of himself and Tamela. He argues that there was no negligence on his part that was a cause of the accident.
A review of the trial court's written reasons for judgment shows that it found that the posted speed limit at the accident site was 35 miles per hour, and that Chaisson was exceeding the speed limit. The trial court also found that regardless of the speed at which Chaisson was driving, he was not keeping a proper lookout and took no evasive actions to avoid the accident. Based on these findings, the trial court held that Chaisson was negligent and that said negligence was a cause of the accident.
In making a determination of whether Chaisson is liable to plaintiff on the basis of negligence, we must first inquire as to whether any causal relationship exists between the harm suffered by plaintiff and Chaisson's alleged negligent conduct. Thus, if plaintiff can show that he probably would not have suffered the injuries complained of but for Chaisson's conduct, he has carried his burden of proof relative to cause-in-fact[3].
Edward Morvant (Morvant) was employed by the City of Jennings as a police officer when the accident occurred. He investigated the accident and testified at the trial of this matter. He determined that the point of impact was somewhere within the northbound lanes of La. 26. However, he was unable to testify as to the speed limit at the site of the accident. Under direct examination, he stated that the speed limit was approximately 35 miles per hour, but admitted that he failed to record the posted speed limit on his official accident report. Further, under cross-examination, he stated that the speed limit, "... certainly could have been ..." 45 miles per hour. Morvant acknowledged that he did not issue Chaisson a citation for speeding.
Chaisson testified that he was driving at approximately 45 miles per hour as he approached the accident site. At that time, he was taking a friend, Kenneth Miller (Miller), to a hospital in Jennings. Miller had cut his leg while helping Chaisson lay some carpets in his home. Chaisson stated that his wife had partially stopped the bleeding from the wound and that they were going to the hospital to see if the wound needed stitching and if Miller needed a tetanus shot. As far as he could recall, there was a sign raising the speed limit to 45 miles per hour before one reached the accident site traveling north.
Miller testified that the speed limit at the accident site was 45 miles per hour. He was positive that the sign indicating that speed limit was located before the intersection as one traveled north on La. 26. He was unable to testify as to how fast Chaisson was driving at the time, but stated that they were going no faster than the surrounding traffic. Miller's wife, Neldarine, was also a passenger in the Chaisson vehicle. She believed that the speed limit at the site of the accident was 45 miles per hour. Chaisson, Miller, and Neldarine all testified that they were in no particular hurry to get to the hospital as they felt that there was no imminent threat to Miller's health from the wound. Mr. and Mrs. Miller estimated Chaisson's speed to have been approximately 45 miles per hour at the time of the accident. The only other evidence regarding the speed limit at the accident site was the testimony of Keith LeJeune, who was a witness to the accident. He felt that it was 35 miles per hour.
We feel that there is no credibility question regarding the testimony given by the witnesses as to the speed limit at the accident *564 site. The evidence indicates that, within a distance of no more than two long city blocks, the speed limit changed rapidly from 35 miles per hour to 45 miles per hour and, finally, to 55 miles per hour. Morvant noted the problem when he stated:
"That stretch of highway has been under fire from several agencies as to the speed limit there and we had problems working radar in that area because of the traffic problem, because of the [posted] speeds [limits] changing rapidly...".
It is our opinion that the trial court committed manifest error in finding that the speed limit at the accident site was 35 miles per hour. There was no factual evidence presented to the trial court upon which it could make such a finding. This is evident from the following statement made by the trial court in its written reasons for judgment:
"The court believes that the posted speed limit at the time of the accident was thirty-five miles per hour rather than forty-five miles per hour." (Emphasis ours.)
In Louisiana tort cases, plaintiff must prove, by a preponderance of the evidence, both the negligence of the defendant and the damages caused by the latter's fault; the proof need be only by a preponderance of the evidence. This burden of proof may be met by either direct or circumstantial evidence. Proof by direct or circumstantial evidence is sufficient to constitute a preponderance when, taking the evidence as a whole, such proof shows that the facts or causation sought to be proved is more probable than not. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La.1971), and authorities cited therein.
Plaintiff has failed to prove that it is more probable than not that the speed limit at the accident site was 35 miles per hour, or that Chaisson was exceeding the posted speed limit to any significant degree.
As noted above, the trial court also found that Chaisson was not keeping a proper lookout and took no evasive action to avoid the accident. It is our opinion that this finding is also clearly wrong insofar as the trial court found that Chaisson was not keeping a proper lookout.
Chaisson testified that he saw Tamela's vehicle prior to the accident and, as far as he could recall, she had her left-turn signal on. He was unable to remember how far away he was from her vehicle when she began making her left turn. However, when she did begin to turn, he remembered that he did apply his brakes, but was unable to avoid the collision. Miller was asked to explain to the court how the accident happened, to which he replied:
"Well, from what I could tell from where I was sitting, she just turned directly in front of our path and there was no way to avoid hitting her."
Mrs. Miller also testified that Tamela turned right in front of Chaisson's vehicle and that there was no way he could avoid the accident.
Tamela testified that she had come to a complete stop and had waited for several vehicles to pass before attempting to make a left turn onto Eleventh Street. She stated that she saw Chaisson's vehicle a block or more away from the intersection, when she began to make her turn. However, Chaisson's vehicle struck her broadside in the inside north-bound lane of La. 26. She was unable to recall Chaisson's vehicle giving her any outward appearance that it was traveling at a high rate of speed. Tamela did admit that, after seeing Chaisson's vehicle a block or more away, she never looked in that direction again. Instead, she focused her attention toward the street she was attempting to turn onto. She further admitted that if Chaisson was not speeding, she must have misjudged the speed at which his vehicle was traveling.
Tamela was approximately sixteen years old at the time of the accident. Our review of the record convinces us that the sole cause of this accident was an error in judgment made by a young and inexperienced driver. There is no evidence in the record which indicates that Chaisson was operating his vehicle in any manner other than as a prudent and careful driver, when he was *565 suddenly faced with an emergency not of his own making. Under these facts and circumstances, the trial court was clearly wrong in finding any conduct on Chaisson's part that was a cause-in-fact of the accident.

STATE FARM'S COVERAGE
We have concluded that the trial court committed manifest error in finding Chaisson to have been negligent. Thus, the issue we must now decide is whether State Farm is liable to plaintiff under both the liability and U/M coverages of the policy it issued providing insurance coverage for the vehicle in which Jacquelynn was riding.
State Farm contends that plaintiff is unable to recover under both the liability and U/M coverages provided by the policy. It argues that the terms of the policy prohibit recovery under both coverages. However, plaintiff argues that an amendment to the State Farm policy defining the term "underinsured motorist" allows such a recovery.
We note at the outset that Nall v. State Farm Mutual Automobile Insurance Company, 406 So.2d 216 (La.1981), held that the terms of an automobile insurance policy excluding coverage under both the liability and U/M provisions of the policy are valid, and are not in derogation of the mandatory requirements set forth in the uninsured motorist statute. Thus, we must look to the terms of the State Farm policy in question to determine whether recovery is allowed under both coverages.
The amendment to the State Farm policy defining an "underinsured motor vehicle" provides, in pertinent part:
"In consideration of the premium at which the policy is written, it is agreed that coverage U is amended by changing the term `uninsured automobile' to `uninsured motor vehicle or underinsured motor vehicle' except in the definition of `uninsured automobile' where the change is to `uninsured motor vehicle'.
It is further agreed that the following definition is added.
`underinsured motor vehicle' means an automobile with respect to the ownership, maintenance and use of which the sum of the limits of liability under all bodily injury liability bonds, insurance policies and any other security provided by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law, or any similar law or provided by the United States of America, Canada, a state, a political subdivision or agency of any such government applicable at the time of the accident is insufficient to satisfy the damages sustained by the insured to the extent that said damages exceed said limits of liability; but `underinsured motor vehicle' shall not include:

(1) an uninsured motor vehicle;
(2) a land motor vehicle or trailer, if operated on rails or crawler-treads or while located for use as a residence or premises and not as a vehicle; or
(3) a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads." (Emphasis ours.)
Plaintiff argues that this definition does not exclude coverage for the insured (the vehicle driven by Tamela) automobile. However, this amendment specifically provides that the term "uninsured automobile" is changed to "uninsured motor vehicle" in the definitions found in the U/M provisions of the policy. The amendment then goes on to state that an "underinsured motor vehicle" shall not include an "uninsured motor vehicle".
A review of the U/M provisions of the policy setting forth the definitions of the various terms used therein reveals the following regarding the definition of an "uninsured automobile", which term it must be remembered has been changed to "uninsured motor vehicle" by the amendment to the policy reproduced above:
"`uninsured automobile' includes a trailer of any type and means:
(a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility *566 law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or becomes insolvent within one year after such accident or
(b) a hit-and-run automobile; but the term `uninsured automobile' shall not include:

(1) an insured automobile or an automobile furnished for the regular use of the named insured or a relative." (Emphasis ours.)
It is clear from a reading of the above definitions that the term "uninsured motor vehicle" does not include an insured automobile. Thus, by definition, the term "uninsured motor vehicle" found in the amendment to the U/M provisions of the State Farm policy does not include an insured automobile. The term "insured automobile" is defined in the U/M provisions of the policy as "an automobile described in the policy for which a specific premium charge indicates that coverage is afforded". Item 4 of the declarations contained in the policy describes the vehicle in which Tamela and Jacquelynn were riding. The declarations indicate that this is the vehicle for which a specific premium is charged to afford coverage. Thus, it is an "insured automobile", which is not included in the definitions of either an "uninsured motor vehicle" or an "underinsured motor vehicle" as those terms are defined in the U/M provisions of the policy.
The extent of the U/M coverage provided by the policy is set forth in the following paragraph, which is reproduced in pertinent part:
"COVERAGE UUninsured Motorists (Damages for Bodily Injury). To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile." (Emphasis ours.)
We note once again that the amendment to the policy has changed the term "uninsured automobile" to "uninsured motor vehicle" or "underinsured motor vehicle". Jacquelynn is an "insured" as that term is defined in the U/M provisions of the policy. However, she is not legally entitled to recover damages for bodily injury from any owner or operator of an "uninsured automobile" as that term is now defined in the U/M provisions of the policy.
It is our opinion that the trial court committed manifest error in finding that plaintiff could recover under the U/M coverage of the State Farm policy. The terms of the policy exclude such coverage under the facts and circumstances present in the action sub judice.
Having found that plaintiff is unable to recover under the U/M provisions of the policy, the issue of whether legal interest on judgments under such coverage begins to run from the date of judgment, or the date of judicial demand, is moot.

ANSWER TO APPEAL
Plaintiff has answered the appeal contending that the trial court's judgment should have held State Farm liable, in solido, with Chaisson for the full amount of the judgment, which totals some $364,885.62. However, in his brief filed in this Court, plaintiff makes no argument concerning this contention, nor does he cite any authority in support of it. We find no merit to plaintiff's contention.

DECREE
For the above and foregoing reasons, the trial court's judgment finding Chaisson to have been negligent and holding him liable *567 to plaintiff is reversed. The trial court's judgment awarding plaintiff the sum of $52,000 against State Farm is hereby amended to delete therefrom that portion of the award attributable to State Farm's U/M coverage ($25,000). The award is reduced to $27,000, and the judgment is affirmed as amended.
All costs of this appeal, and in the trial court, are assessed against plaintiff-appellee.
REVERSED IN PART, AFFIRMED IN PART, AS AMENDED.
NOTES
[1] Plaintiff also named the XYZ Insurance Co. as a defendant, alleging that this unknown insurance company had issued an automobile liability insurance policy or policies to Chaisson, which were in full force and effect at the time of the accident. However, the evidence later showed that Chaisson was uninsured at that time.
[2] Plaintiff and Allstate stipulated to the extent of Allstate's liability under the terms of the policy it had issued him, and Allstate tendered its policy limits into the Registry of the Court.
[3] See Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La. 1976); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (La. 1972); Head v. St. Paul Fire & Marine Ins. Co., 408 So.2d 1174 (La.App. 3 Cir.1982), writ denied, 412 So.2d 99 (La.1982); Wattigny v. Lambert, 408 So.2d 1126 (La.App. 3 Cir.1981), writ denied, 410 So.2d 760 (La.1981).