414 So.2d 847 (1982)
Lennah TURNER
v.
NEW ORLEANS PUBLIC BELT RAILROAD.
No. 12927.
Court of Appeal of Louisiana, Fourth Circuit.
May 11, 1982.
Marie A. Moore, Harry S. Hardin, III, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-appellee.
Michael D. Cucullu, Houston, Tex., for plaintiff-appellant.
Before KLEES, BYRNES and CIACCIO, JJ.
KLEES, Judge.
Lennah Turner was employed by New Orleans Public Belt Railroad as a machine operator. In August of 1979 he filed suit against Public Belt claiming that on March 1, 1979, while lifting a railroad tie to the back of a truck with four co-employees he *848 suffered an inguinal hernia. He alleged that Public Belt's negligence caused his injuries and sought damages under the Federal Employer's Liability Act. The trial court found that Turner sustained a hernia while lifting the tie, that Public Belt's negligence was a proximate cause of his injury, but that Turner had also been guilty of contributory negligence. The Court then awarded $5,000.00 to Turner. Turner has appealed the finding that he was contributorily negligent and the Railroad has answered the appeal seeking reversal or a reduction in the damage award.
The facts are that on March 1, 1979, Mr. George Stoulig, a supervisor for the railroad ordered four men, including the plaintiff, to help the dump truck driver load twelve seventeen foot cypress railroad ties onto the back of a dump truck. To load the ties onto the truck, four men, two at each end, would lift the tie and carry it to the truck. The two men in the front would then lift the tie onto the back of the truck and work their way back to help the two men in the back push the tie further into the back of the truck. The plaintiff, who was one of the men on the front end of the tie injured himself when lifting the tie onto the back of the dump truck.

STANDARD OF REVIEW
"The scope of review by state appellate courts in reviewing federal statutory actions, such as FELA cases tried in state courts, is the same scope of review as is applicable in the federal court system. Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63 (1971); Broussard v. Missouri Pac. R. Co., 376 So.2d 532 (La.App. 3rd Cir. 1979).
The applicable standard of federal appellate review is prescribed in Rule 52(a) of the Federal Rules of Civil Procedure and is set forth and discussed by Mr. Justice Reed in United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948), as follows:
"That rule prescribes that findings of fact in actions tried without a jury `shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses' ...
A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."
Determination of negligence and contributory negligence are tested under the "clearly erroneous" rule. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Black v. Greyhound Corporation, 314 F.2d 485 (CA5th 1963); Carrier v. United States, 369 F.2d 322 (CA5th 1966) cert. denied, 386 U.S. 1027, 87 S.Ct. 1388, 18 L.Ed.2d 470; Bethlehem Steel Corp. v. Yates, 438 F.2d 798 (CA5th 1971); Nelson v. Jacksonville Shipyards, Inc., 440 F.2d 668 (CA5th 1971).
The appellant contends that the trial court's finding that the plaintiff was contributorily negligent was "clearly erroneous".
Presumably the basis for this finding was in the belief that the plaintiff tripped over the railroad track and injured himself as a consequence of carrying the tie and failing to watch where he was going.
The language relied upon by the appellee in support of the trial court's finding lies in a portion of the direct examination of plaintiff:
Q. What were you doing?
A. Loading switch ties.
Q. Can you describe for me specifically what type of activity you were engaged in when you first noticed anything?
A. Well, I stumbled coming to the truck. When you are carrying weight of that type, you don't look down, you try and keep your head up, and keep your balance. When I got to the truck, I must have still been off balance. When I lifted the tie up, I felt a hurtness sensation, ripness.
Q. Did you feel anything when you stumbled?
A. Sir, I didn't notice.
*849 It is reasonable to assume that the trial court concluded that the stumbling caused a chain of events which resulted in his lifting the tie while off balance. From our reading of the record we cannot conclude that this finding was "clearly erroneous".
The court must next consider whether the trial court erred in finding that the defendant was negligent. The trial judge did not indicate in his findings exactly how the defendant was negligent, but from a careful review of the record it appears that the defendant was negligent in failing to assign a sufficient number of men, or a sufficient work force to move the railroad ties manually. The record discloses that moving the ties through the use of a burrow crane was the safest method. However, the only burrow crane available was not in working order.
Thus, the real question facing this court should be whether the work force assigned for this task was sufficient. Based upon totality of the circumstances we conclude that the work force assigned to the task was insufficient.
The record reveals that four men were actually lifting these railroad ties. The ties, seventeen feet in length, were the largest used by the railroad and weighed approximately 240-250 pounds each. The other three men who helped move the ties testified that they remembered using as much as six men and one of the men, Manuel Sims stated that as many as eight (8) men were once used to move ties ranging from 9-16 feet in length. Considering that only four men were used in the present situation it was plainly foreseeable that a worker could sustain the type of injury suffered by the plaintiff while lifting the railroad ties onto the dump truck.
Finally, the appellees argue that the injury sustained by the plaintiff was not a result of the incident in question. There was conflicting medical testimony but the plaintiff did undergo surgery after the incident and the surgery did disclose and correct an indirect inguinal hernia. The plaintiff testified that he had no such problem prior to March 1, 1979 and the defendants produced Dr. Alvin Smith who testified that he diagnosed the same problem when he examined the plaintiff in 1972. This finding was disputed by Dr. Dabney Ewin who testified that it was his opinion that the plaintiff did not have a hernia of any kind between 1970-1979. Nevertheless, the trial judge obviously felt that the plaintiff was truthful and accepted his testimony as the true account of when he sustained the hernia. Under these circumstances we conclude that the trial judges determination that the hernia was sustained by the plaintiff on March 1, 1979 was not "clearly erroneous".
The special damages totalled $8,304.35, the duration of his treatment after surgery appears to have lasted approximately six (6) months. In addition the plaintiff did have two visits with his doctor on December 21, 1979 and January 7, 1981. The plaintiff also wears a support device which he claims is uncomfortable. However there was testimony from Dr. Ewin that such a device is unnecessary.
As cited by the appellant, Mileski v. Long Island RR. Co., 499 F.2d 1169 (C.A. 2nd 1974) holds that the measure of recovery for pain and suffering is fair and reasonable compensation, to the extent that injuries, pain and suffering can be translated into dollars. In view of the facts as elicited above, and the nondisabling nature of plaintiffs injuries we conclude that the amount of $5,000.00 awarded plaintiff was correct. As in all cases concerning damages the award given by the trial judge must be considered to have been an abuse of his discretion before it can be reversed or modified on appeal. Bailey v. Pacific R. R. Co., 383 So.2d 397, 403 (La.App. 3rd Cir. 1980) cert denied 385 So.2d 784 (La.1980).
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.