482 So.2d 954 (1986)
Lionel WOLFSHOHL & Josie Wolfshohl, Plaintiffs-Appellants,
v.
Melton P. BOUDREAUX, Offshore Logistics Inc. & Insurance Company of North America, Defendants-Appellees.
No. 84-977.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1986.
*955 Gibbens and Blackwell, J. Louis Gibbens, New Iberia, for plaintiffs-appellants.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Douglas Longman, Jr., Lafayette, Michael Stagg Guiklory, New Orleans, for defendants-appellees.
Before DOMENGEAUX, LABORDE and KING, JJ.
LABORDE, Judge.
Plaintiffs on this appeal, Lionel and Josie Wolfshohl, contend that the amount of damages awarded by the trial court is manifestly inadequate. Defendants, Melton P. Boudreaux, Offshore Logistics, Inc., and Insurance Company of North America, maintain that the trial court did not abuse its discretion in determining the award. Defendants admitted liability; therefore, liability is not an issue before us on appeal. The trial court awarded $110,429.40 to Mrs. Wolfshohl in compensation for her pain and suffering, disability, loss of earning capacity, *956 and medical and travel expenses. We find no abuse of discretion by the trial judge and affirm his judgment.
On April 9, 1978, Lionel Wolfshohl and his wife Josie were involved in an automobile accident in Lafayette Parish on the Evangeline Thruway. The driver of the other vehicle, Melton P. Boudreaux, was operating the vehicle while in the course and scope of his employment with Offshore Logistics, Inc. The parties have stipulated that at the time of the accident both defendants were covered by a liability insurance policy issued by the Insurance Company of North America.
Unaware that she had been injured, Mrs. Wolfshohl did not immediately seek medical care, but went directly home. The next day, she visited her family physician, Dr. Douglas Sagrera, complaining of pain in her right arm and shoulder, and of abrasions on her shins.
A couple of weeks following the accident, Mrs. Wolfshohl developed a pain in her neck radiating into her shoulder blades. Finding no relief from her pain, Mrs. Wolfshohl consulted Dr. Richard LeBlanc, an orthopedic surgeon, who continued conservative treatment. Mrs. Wolfshohl continued to see Dr. LeBlanc through 1979 until he recommended surgery to alleviate the pain diagnosed as a symptom of tennis elbow. Mrs. Wolfshohl consulted Dr. McKeever of Houston, Texas, for a second opinion regarding surgery. After the consultation, Mrs. Wolfshohl continued to have doubts as to the necessity of surgery.
In 1981, Mrs. Wolfshohl resumed conservative treatment and began physical therapy upon the recommendation of Dr. Robert Martinez, a neurologist practicing in Lafayette. After performing a myelogram, Dr. Martinez diagnosed Mrs. Wolfshohl as suffering from a ruptured disc at C5-6 and C6-7 (cervical vertebrae).
Surgery was finally performed by Dr. Robert Rivet in November of 1981. Mrs. Wolfshohl was hospitalized and underwent a discectomy and fusion at C5-6 and C6-7. Recovery was routine and the surgery was considered successful by Drs. Martinez and Rivet. As a result of the surgery, Dr. Rivet assigns a 10 to 15 percent disability to Mrs. Wolfshohl. Mrs. Wolfshohl testified that she feels better, but that she must still endure pain when she exerts herself. She has been discharged by the doctors and sees physicians only on an "as needed" basis.
At the time of trial, Mrs. Wolfshohl was forty-five years of age. She suffers a ten to twenty-five percent disability to her body. She suffers from headaches and pain in her right shoulder when performing routine household duties or recreational activities. The evidence indicates that the discomfort and physical limitations are a result of the injury she sustained on April 9, 1978.
At the conclusion of the trial, the judge awarded Mrs. Wolfshohl $100,000.00 for her past and future pain and suffering (both physical and mental), her disability, and her loss of earning capacity. The court also awarded special damages in the amount of $9,912.60 for medical expenses and $516.80 for travel expenses. On appeal, plaintiffs contend that these damages are manifestly inadequate.
To support the contention of inadequacy, plaintiffs assign three errors to the trial court: (1) in failing to award Mrs. Wolfshohl for her past loss of wages; (2) in failing to award Mrs. Wolfshohl adequate damages for her pain and suffering, disability and loss of wage-earning capacity; and (3) in failing to award Mrs. Wolfshohl for the expense of psychiatric counselling. We will address assignments one and two together, then consider assignment number three alone.
Appellants assert that the trial judge abused his discretion in not awarding damages for loss of past wages and in awarding inadequate damages for pain and suffering, disability, and loss of wage-earning capacity. Our review of damage awards granted by the trial court is narrow. Louisiana Civil Code article 2324.1 dictates that in the assessment of damages resulting from offenses and quasi-offenses, *957 "much discretion must be left to the judge or jury." Unless the record demonstrates that the trial court abused this "much discretion," the appellate court should not disturb the award. Coco v. Winston Industries, Inc., 341 So.2d 332, 334 (La.1976).
Absent an abuse of discretion by the trier of fact, the degree of uncertainty in calculating damages does not permit the reviewing court to substitute its judgment for that of the trial court merely because the reviewing court believes that a different award would have been more appropriate. Robinson v. Graves, 343 So.2d 147, 149 (La.1977). As stated in Bitoun v. Landry, 302 So.2d 278 (La.1974):
"The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court. Only when the trial court abuses its broad discretion should the award be adjusted, either up or down." Id. at 279.
We feel that the award to Mrs. Wolfshohl is on the lower end of damages appropriate for this type of an injury. This fact notwithstanding, we are hard-pressed to conclude that the trial judge abused his discretion.
The trial judge, in his reasons for judgment, stated that plaintiffs had failed to prove by a preponderance of the evidence that Mrs. Wolfshohl is entitled to recover damages for any loss of past or future income. The trial judge held that in light of Mrs. Wolfshohl's past and present ability to work, and her sporadic employment history, the award for Mrs. Wolfshohl's loss of earning capacity sufficiently compensates her for the damage she has suffered. We have reviewed the record and find ample evidence to support the trial judge's conclusions. See Burnham v. Frey-Shoemaker-Colbert-Brodnax, 445 So.2d 477, 484 (La.App.2d Cir.1984).
The trial court awarded Mrs. Wolfshohl the lump sum of $100,000.00 for pain and suffering, disability, and loss of earning capacity. We do not know what percentage of the award was alotted to which category. We find that under the specific facts of this case, $40,000.00 would adequately indemnify Mrs. Wolfshohl for her pain and suffering and disability. See Maxwell v. Gibson, 421 So.2d 1175 (La. App.2d Cir.1982), writ denied, 426 So.2d 179 (La.1983). This leaves $60,000.00 to indemnify Mrs. Wolfshohl for her decreased earning capacity.
Earning capacity is determined by deducting Mrs. Wolfshohl's earning ability after the injury from her earning ability immediately prior to the injury rather than by deducting her income after the injury from her income prior to the injury. Coco, 341 So.2d at 338. To arrive at the correct measure of damages, it is also essential to direct attention to Mrs. Wolfshohl's work record, the amount of her earnings and the probability that she would have been able to earn similar amounts for a number of years but for the disability brought about by the 1978 accident. See Viator v. Gilbert, 253 La. 81, 216 So.2d 821, 822 (1968).
Mrs. Wolfshohl's earning capacity has not been radically diminished by the accident. She is a registered nurse, and has practiced her trade on a part-time or full-time basis since 1959. She has, on occasion, worked in other fields and at times she has not worked at all. Evidence shows that Mrs. Wolfshohl earned over $6,000.00 a year only twice from 1959 to the date of her accident. From 1974 until the date of the accident, Mrs. Wolfshohl earned only $4,415.90. The record also shows that, while at the time of the accident plaintiff was unemployed, after the accident Mrs. Wolfshohl secured a job paying almost $13,000.00 annually. She retained this job until funding for the position expired. We agree with the trial court that plaintiff failed to prove lost past wages.
Several doctors examined Mrs. Wolfshohl. The consensus is that the surgery was successful, leaving Mrs. Wolfshohl with a 10 to 25 percent disability. *958 Dr. Rivet indicated that Mrs. Wolfshohl could return to nursing duties. Dr. Martinez opined that Mrs. Wolfshohl could return to employment provided that she does not have to perform repetitive lifting or pulling in excess of 25 pounds. He suggested that an administrative or teaching position would be appropriate and within her capabilities. Mr. Hubbard explained that Mrs. Wolfshohl is well qualified for these positions, and that nurses in these positions are paid higher salaries than salaries of regular floor nurses.
Jay Hubbard, a vocational rehabilitationist retained by Mrs. Wolfshohl, established that there is a variety of nursing positions available to her. Mr. Hubbard opined that Mrs. Wolfshohl could not return to work as a floor nurse, but a floor nurse supervisor or staff coordinator, positions which entail light physical labor, would be viable alternatives.
Mrs. Wolfshohl asserts that her earning capacity has been devastated. We feel that her earning capacity was perhaps diminished, but that she was adequately indemnified for that loss with the award of $60,000.00 (i.e. $100,000.00 award minus $40,000.00 for pain suffering and disability). The United States Department of Labor data, provided by Mr. Hubbard, sets Mrs. Wolfshohl's "work-life" expectancy at 11.9 years. The award more than adequately supplements Mrs. Wolfshohl's future income by over $5,000.00 per year. Plaintiffs failed to prove that Mrs. Wolfshohl would suffer a reduction of earning capacity greater than this amount. The trial court did not abuse its discretion; the award will not be disturbed. See Reck v. Stevens, 373 So.2d 498, 501 (La.1979); Gonzalez v. Lockette, 410 So.2d 265, 270 (La.App. 4th Cir.1982).
Finally, appellants assert that the trial judge erred in failing to award Mrs. Wolfshohl for the expenses involved in receiving psychiatric counselling at the Lafayette Institute of Behavior Therapy. The trial court held that Mrs. Wolfshohl failed to sustain her burden of proving that defendants' negligence was the cause of her need to obtain this treatment.
After reviewing the record, we find that the trial judge was not manifestly wrong in making this determination. The trial court was well justified in finding that Mrs. Wolfshohl received therapy for reasons other than that of the accident. Mrs. Wolfshohl testified that she had received therapy and admitted that counselling at the Lafayette Institute of Behavioral Therapy had to do with marital problems. She did not intimate that her problems were caused or aggravated by her injuries. The only other person testifying as to Mrs. Wolfshohl's therapy was Suzanne Wells, an employee at the Institute. Ms. Wells holds a Ph.D. in psychology, but is not a psychologist nor is she licensed to practice in Louisiana. By deposition, Ms. Wells indicated that Mrs. Wolfshohl received therapy for depression, family and marital problems. In Ms. Wells' opinion, the accident aggravated Mrs. Wolfshohl's emotional state. The trial court correctly found that this evidence failed to establish a causal link between the accident and the necessity for behavior therapy.
For the above and foregoing reasons, the judgment of the trial court is affirmed with costs of this appeal assessed to appellants.
AFFIRMED.