DOMENGEAUX, Judge.
Jimmy Zachary commenced these proceedings to recover damages for the injuries he sustained in an automobile-bicycle accident. Zachary, who was riding the bicycle, named as the only defendant, Travelers Indemnity Company (Travelers), the automobile liability insurer of the vehicle operated by Bobby J. Guidroz with which he collided.
The plaintiff sought at trial $201,175.99, plus legal interest, for past, present and future pain, suffering, mental anguish, anxiety, limitation of motion and impairment of functions, lost wages and/or diminished earning capacity and medical expenses. Only $1,175.99 of the plaintiffs demand represented past medical expenses.
The Trial Court, subsequent to a trial on the merits, rendered judgment in favor of Zachary. The plaintiff was awarded $2,500.00, plus his medical expenses, but the Trial Judge assigned ninety percent of the fault for the accident to Zachary and reduced his recovery accordingly.
The accident in issue occurred on July 18, 1985, at about 8:30 p.m. The day was described by the plaintiff as clear and sunny. Zachary specifically testified that at the time of the accident it was still daylight.
The police officers who investigated the accident, Sgt. Austin W. Nacoste of the Louisiana State Police and Officer Michael Fitzgerald, who at the time was a Port Barre Police Officer, suggested that the evening was not as clear and bright as portrayed by the plaintiff. Officer Nacoste testified that he was notified of the accident at approximately 8:37 p.m. He stated that the day in question had been cloudy and that when he arrived on the scene the time of day was comparable to dusk or dawn. He noted in his records that sunset on the day in question had been 8:07 p.m., but he did not state whether it was daylight savings time. Sgt. Nacoste also recounted that he was using his headlights when he was called to the scene.
Officer Fitzgerald, who had only recently joined the Port Barre police force, testified that he arrived on the scene at 8:42 p.m. He testified that the evening was a “normal night”, although his report did differ in minor respects from the report of Officer Nacoste. Fitzgerald, as did Nacoste, indicated that he had been using the headlights on his patrol car prior to being called to the scene.
The scene of the accident was Louisiana Highway 103 in St. Landry Parish as it approaches Louisiana Highway 190. The collision occurred directly in front of the Guidroz residence on Highway 103. Highway 103, as it passes the Guidroz residence, is a standard twenty-four foot wide two lane blacktop highway with, as described by one of the investigating officers, yellow dashes down the center. The highway runs north-south, with the Guidroz residence located on the northbound lane side of the street.
Guidroz was in his front yard speaking with Fitzgerald just prior to the accident. A car sped down Highway 103 in a northerly direction as the two men were conversing, causing Fitzgerald, who was on-duty at the time, to end the conversation and pursue the driver. Guidroz, whose State Police car was parked in his driveway, chose to follow Fitzgerald to render assistance and out of simple curosity.
Zachary, at this time, was riding a friend’s ten-speed Magna bicycle down the middle of the southbound lane of Highway 103 a short distance from and traveling in the direction of the Guidroz residence. Officer Fitzgerald, traveling north, passed *1302 Zachary and noticed the plaintiff change from the southbound lane to the northbound lane. Fitzgerald remembered looking in his rear view mirror and seeing Zachary change lanes as he passed him. Zachary stood out in Fitzgerald's memory because Fitzgerald thought the plaintiff was riding very carelessly.
When Guidroz entered his automobile and began backing out of his driveway he was unaware Zachary was approaching. Prior to entering Highway 103, he looked to his right to check the northbound traffic, the traffic which would have been in the lane adjacent to his home. He did not look to his left because he said he did not intend to cross the center line of the street and obstruct traffic in the southbound lane.
The collision occurred as the Guidroz vehicle was partially in the street in the northbound lane and partially in the driveway. Guidroz maintains that his vehicle was only about two feet into the road when, prior to the accident, he heard Zachary “holler”. Guidroz stated that when he heard the plaintiffs call he immediately stopped his vehicle, shortly after which Zachary’s front bicycle wheel collided with the left rear panel of the car near the bumper. Guidroz’s statement as to the point of impact was supported by both Na-coste and Fitzgerald based on evidence they observed at the scene.
Zachary, who was wearing a white T-shirt and jeans, maintains that as he was riding his bicycle past Guidroz’s driveway, Guidroz accelerated rapidly and struck his bike with the left side of the rear bumper. The plaintiff testified that he was halfway past Guidroz’s driveway when he was struck and attributed the accident, in part, to a large wooden fence on the Guidroz property which obstructed Guidroz’s view of the road. Zachary testified during a deposition that the fence was only two or three feet from the roadside, however, at trial he estimated the distance, which the bailiff measured, to be approximately twelve feet. The plaintiff’s testimony was, however, countered by Fitzgerald, Nacoste and Guidroz who respectively stated that the fence was fifteen to twenty feet, in excess of twelve feet and forty feet from the roadway.
The evidence presented at trial further suggests three additional factors which could have contributed to the accident. The most significant factor is the fact that Zachary was riding his bike very fast and had poor brakes. Nacoste and Fitzgerald both testified that the handlebar braking system of the ten-speed bike was not functioning properly. They stated that when the brakes were engaged the brake pads did not make contact with the tire rims or the wheels. The second factor concerns the fact that Zachary was traveling on the wrong side of the highway and was not riding close to the curb. Zachary was traveling in a southerly direction in the northbound lane. The final possible cause of the accident is that the plaintiff was riding on the highway at dusk and had no headlights on his vehicle.
Zachary sought this review and has assigned two errors. He maintains that the Trial Judge erred in the following respects:
(1) The Trial Judge was manifestly erroneous in assessing ninety percent of the fault for the accident to him and ten percent to Guidroz; and
(2) The Trial Judge abused his discretion when he awarded the “grossly inadequate” sum of $2,500.00 for general damages, future medical expenses and lost wages and/or earning capacity-
The plaintiffs initial issue on appeal challenges the Trial Judge’s assessment of fault. Zachary maintains that his actions demonstrate that he was free from fault. The plaintiff, in suggesting that the responsibility for the accident lies entirely with Guidroz, cites as authority La.R.S. 32:124 (1950) (amended 1962). R.S. 32:124 provides:
The driver of a vehicle about to enter ... a highway from a ... driveway ... shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across any alleyway or driveway, and shall yield the right of way to any pedestrian as may be necessary to avoid collision, and shall *1303 yield the right of way to all approaching vehicles so close as to constitute an immediate hazard.
The jurisprudence interpreting R.S. 32:124 indicates that drivers entering thoroughfares from private driveways must exercise an unusually high degree of care and that the entering motorist has the primary duty of avoiding a collision with vehicles on the highway. Sykes v. Davis, 289 So.2d 199 (La.App. 1st Cir.1973); O’Stean v. Safeco Insurance Company of America, 192 So. 2d 620 (La.App. 2nd Cir.1966); Schackai v. Tenneco Oil Co., 436 So.2d 729 (La.App. 4th Cir.1983), writ denied, 440 So.2d 759 (La.1983).
Travelers in response contends that the Trial Judge’s decision was not manifestly erroneous and suggests that the judgment should be upheld. The appellee, in support of its position, directed the Court’s attention to Title 32 of the Louisiana Revised Statutes, the Louisiana Highway Regulatory Act (Highway Act), specifically citing Sections 193, 194, 197, 329 and 346. La.R. S. 32:193, 194 and 197 (1962); La.R.S. 32:329 (1960), amended (1974); La.R.S. 32:346 (1960) (amended 1962). Sections 193 and 194 grant bicycle riders all the rights and privileges of motor vehicle operators, but also impose comparable duties. Travelers specifically noted that Zachary was traveling on the wrong side of the highway. Section 197 mandates, in part, that bicycle operators “shall ride as near to the right side of the roadway as practicable.” R.S. 32:197, supra. The appellee suggests and the evidence establishes that, in addition to being on the wrong side of the highway, Zachary was riding approximately three feet from the center line, nine feet from the curb.
Sections 329 and 346 address the proper equipment with which Zachary’s bicycle should have been outfitted. Section 329 mandates that every bicycle ridden at night be equipped with a front lamp capable of emitting a white light visible from a distance of at least 500 feet. The remaining aspect of the Highway Act, Section 346, provides that “[ejvery bicycle shall be equipped with a brake which will enable the operator to make the braked wheels skid on dry, level, clean pavement.” R.S. 32:346, supra. Travelers contends, supported by the evidence, that Zachary’s bicycle was not in compliance with either Section 329 or 346.
Subsequent to a thorough review of the law and the evidence, we do not believe the Trial Court was manifestly erroneous. La. Civ.Code art. 2324.1 (1984); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). This aspect of the lower court judgment will, therefore, be affirmed.
The appellant’s second issue on appeal calls into question the Trial Judge’s quantum assessment. Zachary maintains that the Trial Court’s determination that his total damages amounted to only $2,500.00, plus his medical expenses, is “grossly inadequate” and constitutes an abuse of discretion. Although the Trial Court did not indicate whether the plaintiff’s award was for general damages, special damages, or both, we will address each aspect of the appellant’s appeal individually-
This Court in Head v. St. Paul Fire & Marine Insurance Co., 408 So.2d 1174 (La. App. 3rd Cir.1982), writ denied, 412 So.2d 99 (La.1982) set forth the factors to be considered in assessing a general damage award. The Head factors are the severity and duration of the injured party’s pain and suffering. Subsequent to our review of the evidence received by the Trial Court, we do not believe the Trial Judge abused his broad discretion and will, therefore, refrain from altering the award. La.Civ. Code art. 2324.1, supra; Ard v. Samedan Oil Corp., 483 So.2d 925 (La.1986); Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987); Ar-ceneaux, supra.
Zachary testified that immediately following the accident his left shoulder was sore. He stated that the following day, the first occasion on which he sought medical attention his left leg began to feel numb and one-half of his back had begun to swell.
Dr. Robert Morrow, Zachary’s initial treating physician, testified that he did not *1304 see the plaintiff until July 24, 1985, six days after the accident. He stated that during the plaintiffs initial consultation he only mentioned pain in his left arm and in his back. Dr. Morrow thought Zachary might have suffered a lumbar strain and a left elbow strain.
Dr. Morrow, because of the plaintiffs complaints, ordered a series of x-rays. The results of the x-rays were normal, revealing no bony pathology, broken bones, dislocations or fractures. Subsequent to three other visits to Dr. Morrow’s office, Zachary was referred to Dr. Louis Charles Blanda, Jr., an orthopedic surgeon, because he continued to complain of discomfort.
Dr. Blanda initially saw Zachary three months after the accident. He observed during his examination that the plaintiff had a mild limp, difficulty walking heel to toe and that he favored his left leg. These observations, which would appear rather obvious, were never noted by Dr. Morrow.
Dr. Blanda ordered the plaintiff to undergo a series of tests. The doctor testified as to the results, but indicated that the results were all subjective, except for a palpable muscle spasm and a decreased range of motion in Zachary’s back.
Dr. Blanda also had Zachary undergo a CT Scan, to detect any soft tissue or disc injuries, and a Bone Scan. The result of these tests revealed no injuries. The doctor did, however, detect a congenital anomaly with a transitional vertebra at the L-5 level. Dr. Blanda did advise the Court that Zachary’s congenital abnormality, based upon the plaintiff’s description of the accident which the Trial Court questioned, could have been aggravated by the accident.
Dr. Blanda saw Zachary on three other occasions, his last visit being approximately thirteen months prior to trial. The doctor testified that on the plaintiff's second visit Zachary complained of pain, but he was unable to establish any objective source. Subsequent to physical therapy, which Dr. Blanda suggested and which Zachary stated did not improve his condition, the doctor recommended that Zachary undergo a mye-logram to determine the source of his complaints.
Zachary, however, never returned to Dr. Blanda after the doctor raised the possibility of performing a myelogram. The plaintiff stated that he did not return because he was financially unable to afford the procedure. Dr. Blanda did testify, however, that he customarily informs his less financially secure patients of the availability of treatment at the University Medical Center in Lafayette, Louisiana.
During his testimony at trial, Zachary told the Court that he was still in pain. He also testified, under cross-examination, that he was taking no medication for his pain, including such over-the-counter medications as aspirin and Tylenol.
The appellant’s second aspect of his second issue addresses his future medical expenses. Zachary maintains that, whether the Trial Court’s $2,500.00 award was intended to include his future medical expenses or not, it is inadequate and an abuse of discretion. Our review of the record requires that we respectfully disagree. La. Civ.Code art. 2324.1, supra; Ard, supra; Virgil, supra, Arceneaux, supra.
The jurisprudence advises us that future medical expenses are recoverable as an element of an injured party’s damages, despite the fact that they are not susceptible to mathematical certainty. Gaspard v. Breaux, 413 So.2d 288 (La.App. 3rd Cir. 1982). Future medical expenses should, however, only be awarded when there is medical testimony indicating the need for future attention and establishing the probable cost. Mathews v. Hanover Insurance Co., 428 So.2d 1273 (La.App. 3rd Cir.1983); Ainsworth v. State Farm Automobile Insurance Co., 399 So.2d 1242 (La.App. 3rd Cir.1981); Head, supra. We find from our review of the record that the medical testimony suggesting that Zachary may need future medical attention is dated and speculative.
The only medical expert who rendered an opinion as to Zachary’s need for future medical attention was Dr. Blanda, the orthopedic surgeon. Dr. Blanda was not, however, able to render a current opinion because he had not examined the plaintiff for approximately thirteen months. Dr. Blanda did testify, it should be noted, *1305 that many individuals who experience back pain also experience “spontaneous resolution” of their discomfort and that only ten to fifteen percent of all individuals with back pain require surgery.
The appellant’s final aspect of his second issue suggests that the award of $2,500.00 should be increased because of wages he has lost and because his earning capacity has been diminished. Past lost wages, as an aspect of an injured party’s recovery must be established with certainty. Damages for loss of future earnings or diminished earning capacity, however, similar to future medical expenses, are not susceptible to precise determination, but are, nonetheless, recoverable. Richardson v. Continental Insurance Co., 468 So.2d 675 (La.App. 3rd Cir.1985), writ denied, 474 So.2d 1304 (La.1985); Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3rd Cir.1985). The jurisprudence advises that damages for lost earning capacity or lost future earnings is to be determined subsequent to a comparison of the injured party’s earning ability immediately prior to sustaining his injury with his earning ability after his injury. Wolfshohl v. Boudreaux, 482 So.2d 954 (La.App. 3rd Cir.1986); Folse v. Fakouri, 371 So.2d 1120 (La.1979).
Our review of the evidence presented in support of Zachary’s claim for lost wages and diminished earning capacity was at best equivocal. We believe, under these circumstances, that the Trial Judge did not abuse his discretion when he rendered judgment in this case. La.Civ.Code art. 2324.1, supra; Virgil, supra; Arceneaux, supra.
Zachary testified on direct examination that he was working as a construction laborer prior to the accident. He stated that he was working as an independent contractor, “doing construction by the job”, and that on a good week he was able to earn between $700.00 and $800.00. Zachary also told the Court that in June of 1985 he was working for Vinco Construction Company and that he had worked for Vinco for about three years. He testified that at Vinco he was paid between $9.00 and $9.50 per hour and that he worked between sixty and sixty-five hours per week. Zachary stated, however, that he had no W-2 or other appropriate tax forms from any of his jobs because he was always paid in cash. Zachary testified that since the accident he has not returned to work but, he attributed that fact to the accident, not the economy.
Zachary testified under cross-examination that prior to the accident he was “working different places”, and once in a while he worked with a friend named Paul Richard with whom he worked at Vinco. When asked when was the last occasion he worked prior to the accident he reiterated that it was the day before the accident.
Under further cross-examination, the defense impeached Zachary with testimony he gave during a deposition. Zachary stated during his deposition that he last worked prior to the accident with Paul Richard, an independent construction contractor, doing odd jobs. When asked during the deposition when was the last occasion he worked prior to the accident, he testified “[o]h, it’s been about — a good while, almost two years now.” Zachary’s deposition was taken in October of 1986 which would have placed his last date of employment approximately fifteen months prior to the accident.
For the above and foregoing reasons, the judgment of the District Court is affirmed.
All costs of this appeal are assessed against Jimmy Zachary.
AFFIRMED.