FORET, Judge.
This is a personal injury action filed by Arthur Lee Hurt arising out of injuries he sustained in an accident occurring at the home of Purlis and Elda Viator on June 7, 1982. After hearing the evidence, the jury found that plaintiff was 46% at fault and defendants, Purlis and Elda Viator, were found to be 54% at fault. The jury further found that the plaintiff had incurred damages totaling the sum of $136,833.33 and accordingly, judgment was rendered *290 against defendants, Purlis J. Viator, Elda R. Viator, and their insurer, the Northern Assurance Company of America, in the sum of $73,889.99. Both plaintiff and defendants have appealed this judgment.
FACTS
On the evening of June 6, 1982, plaintiff attended a barbeque at the home of Wilbur Barrilleaux located in New Iberia, and thereafter, at approximately 8:00 P.M., he left the barbeque in order to meet with friends he had seen earlier in the day. Plaintiff and his friends met in a parking lot in New Iberia across from a lounge known as “Red’s Saloon” and, according to plaintiff, they remained there until approximately 4:00 A.M. the following morning. While plaintiff admits that some of his friends were drinking that evening, he states that he consumed no alcoholic beverages nor did he enter the lounge at any time that night. It should be observed at this point that none of these “friends” testified at trial and, when questioned as to who they were, plaintiff replied that he could not remember their last names. Upon his leaving the parking lot, plaintiff and a friend went to a nearby Pitt Grill restaurant and had breakfast. Thereafter, plaintiff drove his motorcycle to the home of Purlis Viator, also located in New Iberia, in order to pick up a W-2 form and a letter of sea time which he had previously requested from Viator. Plaintiff states that he arrived at the Viator home at approximately 6:00 A.M., just after daylight, hoping to catch Viator while a crew change was taking place on one or more of the crew boats operated offshore by Viator. Plaintiff states that he walked up a set of steps located on the side of a building to where Purlis Viator formerly operated an office. Upon arriving at the top of the steps and entering upon a small platform, plaintiff noticed that the office was closed and he turned to walk back down the steps. As he began his descent, plaintiff placed his right hand on the hand rail which ran along the outside of the steps and he placed his left hand on a towel rack[1] attached to the outside of the building at the top of the stairs (see exhibit attached noting the location of the towel rack before its removal). As plaintiff reached the second step on his way down, one end of the handrail suddenly became disengaged. Plaintiff states that the handrail pulled out and up against him, causing him to lose his balance and fall to the bottom of the steps. Plaintiff was knocked unconscious by the fall and sustained numerous injuries which shall hereinafter be discussed in particularity.
Plaintiff assigns the following errors on appeal:
1. The trial court erred in refusing to allow plaintiffs human factors expert to testify at trial.
2. The trial court erred in refusing to allow the jury to review the policy of liability insurance on the building in question.
3. The trial court erred in finding that plaintiff was 46% at fault in causing the accident.
4. The damage award made by the trial court is inadequate, considering the injuries sustained by plaintiff as a result of this accident.
In their appeal, defendants contend that the trial court’s award is excessive and should therefore be reduced.
ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, plaintiff contends that the trial court should have allowed his human factor expert, Dr. Kenneth Laughery, to testify at trial. Specifically, plaintiff maintains that Dr. Laughery should have been allowed to testify as to the forseeability that the towel rack in question would be used as a handrail. Human factors is defined by Dr. Laughery as an applied field, applying “people knowledge” to design problems or design settings where people will be involved. The trial court determined that the *291 testimony of Dr. Laughery would invade the province of the jury. The trial court’s finding in this regard should not be disturbed unless an abuse of discretion is shown. State v. Stucke, 419 So.2d 939 (La.1982). Considering the nature of this action, as well as the record in these proceedings, we find that the trial court’s decision to exclude the testimony of Dr. Laugh-ery does not constitute an abuse of discretion. The trial court’s decision in this regard was clearly based upon a well founded concern that the jury might place undue emphasis on the testimony of Dr. Laugh-ery, thus preventing them from making their own independent determination as to whether or not it was foreseeable for the plaintiff to use the towel rack in question as a handrail. It is well established that expert testimony is not to be used in those instances where such testimony will invade the province of the jury and thereby usurp its function. See State v. Stucke, supra. Accordingly, we find this assignment of error to be without merit.
ASSIGNMENT OF ERROR NO. 2
In this assignment of error, plaintiff claims that the trial court erred in refusing to allow the jury to review the liability insurance policy on the building in question. We find this assignment of error to be without merit. C.C.P. art. 1635 states as follows:
“Formal exceptions to rulings or orders of the court are unnecessary. For all purposes it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.”
A review of the record reveals that the plaintiff never requested that the liability insurance policy in question be shown to the jury nor did he enter an objection to the trial court’s decision to do otherwise. Accordingly, by failing to object to the trial court’s ruling in this regard, plaintiff has waived any right to present this issue on appeal. Calderon v. Johnson, 453 So.2d 615 (La.App. 1 Cir.1984).
ASSIGNMENT OF ERROR NO. 3
In his third assignment of error, plaintiff maintains that the trial court erred in finding that he was 46% at fault in causing the accident in question. We disagree. Our review of the record reveals a reasonable factual basis for the trial court’s finding in this regard. Defendants’ safety expert, Dennis R. Howard, testified that the location and appearance of the towel rack was such that it should not give one the appearance of being a handrail, in view of the fact that it was not in keeping with the decline of the steps, nor did it run the length of the steps as did the handrail located on the opposite side. Moreover, the jury had the opportunity to review photographs depicting the location of the towel rack prior to its removal and they therefore were in a position to make their own independent determination as to whether or not it was reasonable for the plaintiff to assume that the towel rack was to be used as a handrail, considering its height, location, and appearance in general. Additionally, the jury could have reasonably concluded that the defendant stumbled and pulled the handrail off the wall in the course of his fall down the steps. The evidence certainly suggests this as a possibility. Plaintiff stated that the handrail felt sturdy when he first grabbed on to it which makes it somewhat improbable that- it would have suddenly become disengaged without a substantial amount of force being exerted upon it, such as would be associated with a fall or sudden loss of balance. A finding by the jury that the plaintiff did, in fact, stumble or otherwise lose his balance while walking down the steps would clearly justify its determination that plaintiff was 46% at fault. In any event, considering the evidence discussed hereinabove, we must conclude that the trial court did not commit manifest error in finding that the plaintiff was 46% at fault and, accordingly, this assignment of error is without merit.
*292 ASSIGNMENT OF ERROR NO. 4
In his fourth assignment of error, plaintiff maintains that the trial court’s award of damages is inadequate and requests that it be increased to the sum of $520,846.96. It is undisputed that plaintiff sustained the following injuries as a result of his fall:
1. compression fracture of the 11th and 12th thoracic vertebrae.
2. herniated disc at the C4-C5 level.
3. umbilical hernia.
Following the accident, plaintiff was taken to Iberia General Hospital and thereafter transferred to University Medical Center in Lafayette, where he underwent treatment for the fractured vertebrae. Plaintiff remained hospitalized for ten days and continued treatment as an outpatient for approximately six months after his release from the hospital. Plaintiffs treating physician at University Medical Center, Dr. Douglas Waldman, testified that surgery was not necessary, but he did instruct plaintiff to wear a back brace 24 hours a day for a period of approximately six weeks. Thereafter, plaintiff continued to wear the brace on an intermittent basis. Plaintiff then consulted Dr. R.C. Llewellyn, a neurosurgeon in New Orleans, with complaints of low back pain and sensations of tingling affecting both legs, as well as pain in his left hip, leg, and foot. Plaintiff first saw Dr. Llewellyn on June 1, 1983 and Dr. Llewellyn hospitalized him for tests on September 26, 1983. Plaintiffs chief complaints upon his admission to Methodist Hospital were neck, shoulder, and arm pain, although he also complained of pain in the abdomen area, as well as pain in the low back area radiating into his left leg. Tests revealed a herniated disc at the C4-C5 level and, on October 6, 1983, Dr. Llewellyn performed an anterior cervical fusion, removing the disc at C4-C5. Upon completion of the neck surgery, Dr. Rudolph Bourgeois repaired the umbilical hernia diagnosed during plaintiff’s hospital stay. Plaintiff was discharged from Methodist Hospital on October 19,1983, but continued to see Drs. Llewellyn and Bourgeois for outpatient treatment after his release from the hospital.
On March 29, 1985, plaintiff consulted Dr. Clark Gunderson, an orthopedic surgeon in Lake Charles, with continuing complaints of pain in the low back area radiating into the buttocks and down into both legs, as well as left shoulder pain. Dr. Gunderson hospitalized plaintiff for tests, and a discogram indicated that plaintiff may have a slight herniation or tear of the annulus (outside ring of the disc) in the low back area at L5-S1. However, Dr. Gunder-son did not feel that surgery was indicated and he has not seen plaintiff since April 19, 1985.
The trial court’s award of damages totaling $136,833.33 necessarily included past medical expenses totaling $27,550.43, as well as past lost wages of at least $34,-253.00, which is the amount computed by defendant’s economist, Dr. Kenneth Boudreaux.[2] This leaves approximately $75,-000 for the plaintiff’s pain, suffering, and disability. Our review of the record convinces us that this award is within reason and does not constitute an abuse of discretion.[3]
It is likely that plaintiff will suffer residual pain and discomfort as well as decreased range of motion as a result of his neck surgery. However, he advised Dr. Gunderson that his neck problems have almost completely disappeared since the *293 surgery and he has made a complete recovery from the hernia operation. As for the fracture of the thoracic vertebrae (broken back), the record is devoid of any evidence indicating that plaintiff continues to experience substantial pain attributable to this injury, which has apparently healed without difficulty. As for the disc problem diagnosed by Dr. Gunderson in the low back area, the medical evidence is conflicting as to both the existence and cause of this injury. Dr. Richard Levy, a neurosurgeon in New Orleans who examined plaintiff on January 27, 1984, stated that he did not find any evidence of disc injury in the low back area, and it was his opinion that the posterior bulging which he observed at L5-S1 was a normal variant which is commonplace in men in their late 30’s and early 40’s. The jury may have accepted Dr. Levy’s testimony in this regard and their decision to do so does not constitute manifest error. Considering the injuries sustained by the plaintiff, we feel that a general damage award of $75,000 is within reason and does not constitute an abuse of discretion. Accordingly, we find this assignment of error to be without merit.
We should also note that defendants have answered the appeal, requesting a reduction in the trial court’s award of damages. Considering the nature and severity of the plaintiff’s injuries, as well as the substantial medical expenses incurred and loss of wages, we feel that the damage award made by the trial court is not excessive and therefore, we shall not disturb this award on appeal.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed one-half to plaintiff and one-half to defendants.
AFFIRMED.
EXHIBIT
[[Image here]]

. All parties agreed that the object in question appears to be a towel rack. However, plaintiff contends that its location at the top of the steps could reasonably lead one to believe that it is to be used as a handrail.

. Plaintiff did not prove loss of earning capacity beyond the date of trial.

. See Wolfshohl v. Boudreaux, 482 So.2d 954 (La.App. 3 Cir.1986), where we determined that a general damage award of $40,000 fairly compensated the plaintiff for ruptured cervical disc at C5-C6, C6-C7, requiring a discectomy and fusion. In Inseco v. Cambridge Mut. Fire Ins. Co., 447 So.2d 606 (La.App. 3 Cir.1984), writs denied, 449 So.2d 1349, 1350 (La.1984), we reversed the trial court's determination of no liability and made a general damage award of $10,000 to the plaintiff who suffered five broken ribs and a fractured lumbar vertebra not requiring surgery. Plaintiff was hospitalized for five days and confined to bed rest for three months. Lastly, in Turner v. New Orleans Public Belt R.R., 414 So.2d 847 (La.App. 4 Cir.1982), the Fourth Circuit affirmed an award of $5,000 to a plaintiff who suffered an indirect inguinal hernia requiring surgery and medical treatment for approximately six months.