638 So.2d 1118 (1994)
Craig DUPRE, Plaintiff-Appellee,
v.
EXXON PIPELINE COMPANY, et al., Defendant-Appellant.
No. 93-1528.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1994.
Rehearing Denied July 26, 1994.
Anthony Craig Dupre, John Blake Deshotels, Ville Platte, for Craig Dupre.
Thomas Kelly Wetzel, Robert Hugh Wood Jr., Vicky Gerl Neumeyer, New Orleans, for Exxon Pipeline Co., et al.
*1119 Jerry Joseph Falgoust, Opelousas, for American Mfrs. Mut. Ins. Co.
Before DOUCET, LABORDE and BERTRAND[*], JJ.
DOUCET, Judge.
This is an appeal from a trial court's finding that the plaintiff was not a statutory employee of the defendant, Exxon Pipeline Company (Exxon), and a judgment awarding damages for injuries sustained by plaintiff as a guest-passenger in a vehicle driven by defendant's employee.
At the time of the accident the plaintiff, Craig Dupre, had been employed by Pitre Welding Service, Inc. (Pitre) off and on for five years.
On the date of the accident, Pitre was doing work on Exxon's pipeline under a contract which provided that Pitre would:
[...] begin and to press with due diligence until completion in accordance with the plans and specifications agreed to by Contractor and EXXON and in a good and workmanlike manner with the necessary crews, tools, machinery, and equipment furnished and maintained by Contractor at its own cost and expense, certain work briefly described as follows:
(a) Provide labor, equipment, and supervision for maintenance, repairs, and welding services for Exxon Pipeline Company, Louisiana-Mississippi Division. Work is more fully described and shall be performed in accordance with all Exhibits attached hereto and made a part hereof for all purposes: Exhibit "A"Pitre Welding Service, Inc. Rate and Labor Sheets; Exhibit "B"Pitre Welding Service, Inc. Certificate of Insurance; and Exhibit "C"Contractor Safety Data Form.
In the days immediately prior to the accident, Pitre was working to remove blockage in the pipeline near Avery Island in New Iberia, Louisiana. Needing more laborers, Pitre called the plaintiff. The plaintiff reported to Morris Pitre's home early on the morning of January 21, 1991. Plaintiff, along with Pitre's other employees, drove to the Exxon office near Sunset, Louisiana. From there, some of Pitre's employees were transported to the job site in a truck belonging to Pitre. Because Pitre's other truck was being repaired, the remainder of Pitre's employees, including the plaintiff, went in a truck belonging to Exxon and driven by James Breaux, an Exxon employee. The Pitre crew performed the work involved in clearing the blockage. At least one Exxon employee helped in the labor. According to the plaintiff, Tommy Faulkerson, a gang leader for Exxon, directed the efforts.
When the pipeline work was finished, the plaintiff got back into the Exxon truck. Breaux' testimony was that they were going to stop near the main road to clean tools. The testimony of Morris Pitre, owner of Pitre Welding Service, Inc., was that the day's work was over, and that they were returning to the Exxon yard before returning home.
Leaving the work site, the Exxon truck got stuck in the mud. In trying to free it Breaux, the driver, backed the truck into a tree. The plaintiff was injured and filed this suit.
After a trial on the merits, the trial judge found Exxon had failed to carry its burden of establishing that the plaintiff was its statutory employee. He further found Exxon to be vicariously liable for the tort of its employee, Breaux. The court awarded damages as follows:

1. Physical and mental pain and anguish,
 past and future $100,000.00
2. Medical
 PAST
 a. Dr. Tassin -0-
 b. Dr. Nason 485.00
 c. Dr. Cobb 13,487.00
3. FUTURE 5,000.00
4. Past Loss of Income 12,000.00
5. Impairment to Future Earning Capacity 100,000.00

Exxon appeals the court's finding that the plaintiff was not its statutory employee. The plaintiff answered the appeal seeking an increase in the award of damages.

*1120 STATUTORY EMPLOYEE

Exxon first argues that the trial judge erred in finding that the plaintiff was not its statutory employee because, at the time of the accident, he was engaged in work covered by the contract and which was integrally related to the trade business or occupation of Exxon.
Effective January 1, 1990, La.R.S. 23:1061 was amended by the Louisiana legislature to provide:
A. When any person, in this Section referred to as the "principal", undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.
In Hanks v. Shell Oil Co., 631 So.2d 1189, 1194 (La.App. 5 Cir.1994), the court described the standard under that amendment as follows:
[3] By the amendment to LSA-R.S. 23:1061, the Louisiana legislature chose to return to a more liberal standard for principal tort immunity first enunciated in Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (La.1950). Under that standard, a statutory employer/employee relationship exists whenever the work performed by the employee is "integrally related" to the principal's business. Salsbury v. Hood Industries, Inc., supra [982 F.2d 912 (5th Cir.1993)]; Duhon v. Conoco, 795 F.Supp. 189 (W.D.La.1992).
As the trial judge stated in his reasons for judgment, Exxon had the burden of establishing that the plaintiff was its employee under La.R.S. 23:1061. Ryder v. Federated Rural Elec. Ins. Co., 495 So.2d 950 (La. App. 3 Cir.1986).
The trial court gave the following reasons for its determination that Exxon had not carried its burden.
Applying the facts of this case to the cited principles of law, this Court concludes that if plaintiff had been injured while performing work on Exxon's pipeline, he would have been Exxon's statutory employee, because work on the pipeline would have clearly been an integral part of Exxon's trade, business or occupation. The Court also concludes that transportation of plaintiff and other Pitre employees was an integral part of Pitre's business.
The crucial question now is was the transportation of plaintiff to and from work an integral part of Exxon's business under Section 1069? [sic] Regardless of which interpretation of the amendment to Section 1061 is applied, the Court finds that it was not for the following: the testimony of the witnesses indicated that Exxon was in the business of transporting natural gas through a pipeline. Exxon contracted with Pitre to perform maintenance work on its pipelines. In the written contract between Exxon and Pitre (D# 1), Pitre was obligated to provide worker's compensation insurance, which presumably covered Exxon; thus Exxon was insulated by Pitre's insurance from the payment of worker's compensation benefits for an injury to Pitre's employees while performing work for Exxon. The Court could find nothing in the contract *1121 which mentioned the responsibility of transporting Pitre employees to and from work sites. Thus, Exxon was not concerned with getting Pitre's employees to and from work; that was Pitre's obligation to the employees pursuant to his employment agreement with them. The fact that an Exxon truck and employee was transporting plaintiff on the date of the accident does not alter this relationship. We must keep in mind that Pitre's truck was broken, and Exxon merely used it's vehicle as a substitute for Pitre's. Had Exxon regularly provided some or all of the transportation of the Pitre employees, then a different conclusion might be reached.
Thus, based on the evidence in the record, the Court concludes that Exxon has failed in its burden of establishing the plaintiff's statutory employment status, and plaintiff can legally maintain this action in tort against Exxon.
The question of statutory employment is a factual one. A trial court's finding on this question should not be disturbed on appeal absent manifest error. Lewis v. Exxon Corp., 441 So.2d 192 (La.1983).
The trial judge found, and we agree, that the plaintiff was, while working on the pipeline, a statutory employee of Exxon. However, the trial judge held that plaintiff was not a statutory employee at the time of the accident, as he had already left the Exxon jobsite. We cannot agree that this status must, in all cases, cease when the employee leaves the job.
Generally, an accident which occurs while an employee is going to or coming from work does not occur in the course and scope of employment. However, there are exceptions to this general rule.
... The courts have held employees entitled to workmen's compensation in those cases in which the employer had concerned himself with the transportation of his employeeshe has furnished transportation
* * * * * *
and/or the employee is furnished travel expenses or is paid wages for time spent in traveling... (citations omitted)
Castille v. Sibille, 342 So.2d 279, 281 (La. App. 3 Cir.1977). Another exception has been recognized when an accident occurs at a place with an unusually hazardous travel risk not common to the average traveler and existing immediately adjacent to the employer's premises. This is known as the threshold doctrine. Fabre v. Travelers Insurance Co., 286 So.2d 459 (La.App. 1 Cir.1973), writ denied, 288 So.2d 646 (La.1974); Mundy v. Dept. of Health & Human Resources, 593 So.2d 346 (La.1992).
These exceptions apply to statutory as well as ordinary employees. Jerry v. Shell Oil Co., 427 F.Supp. 114 (W.D.La.1977), aff'd, 586 F.2d 840 (C.A.5 1978). However, we cannot say that the defendant carried its burden of showing that any of these exceptions apply to the plaintiff herein. The record does not show that in the normal course of work Exxon supplied transportation to Dupre or furnished travel expenses. While Dupre was paid by Pitre for travel time, the trial court could have found that Exxon did not show that it was responsible for this payment. Finally, no evidence was adduced at trial which supports a finding that the accident occurred at a place with "an unusually hazardous travel risk." Accordingly, the trial judge correctly found that Dupre was not a statutory employee of Exxon at the time of the accident. Since Dupre was not an Exxon employee and was injured through the negligence of an on-duty Exxon employee, Exxon was not immune from a tort suit by Dupre.

LOST WAGES
Dupre, in his answer to the appeal, argues that the trial court made inadequate awards of past and future lost wages.
Claims for past lost wages must be established with certainty. Zachary v. Travelers Indem. Co., 533 So.2d 1300 (La.App. 3 Cir.1988). Dupre contends that he established past lost wages of $34,482.00 through the testimony of his economist, Dr. Jan Duggar. Dr. Duggar based his calculation on a 50 hour work week at $6.00 an hour, reduced by 20% for work availability. The record does not support these figures. Dupre's past work record was sporadic. He worked for *1122 Pitre on an as needed basis. In 1989, Dupre earned $20,185.00. In 1990, he earned only $4,411.00. In 1991, up to the date of the accident, he had earned only $341.52. Accordingly, the trial court's award of $12,000.00 in past lost wages is reasonable and not an abuse of the trial court's discretion.
Dupre further contends that he established future lost wages of $284,040.00. Dr. Duggar projected future lost wages of $284,040.00 if Dupre was unable to perform meaningful work; and of $101,135 if Dupre was able to work at minimum wage.
This court in Zachary, supra at p. 1305 stated that:
Damages for loss of future earnings or diminished earning capacity, however, similar to future medical expenses, are not susceptible to precise determination, but are, nonetheless, recoverable. Richardson v. Continental Insurance Co., 468 So.2d 675 (La.App. 3rd Cir.1985), writ denied, 474 So.2d 1304 (La.1985); Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3rd Cir.1985). The jurisprudence advises that damages for lost earning capacity or lost future earnings is to be determined subsequent to a comparison of the injured party's earning ability immediately prior to sustaining his injury with his earning ability after his injury. Wolfshohl v. Boudreaux, 482 So.2d 954 (La.App. 3rd Cir.1986); Folse v. Fakouri, 371 So.2d 1120 (La.1979).
As has been stated, Dupre's employment history is sporadic, reflecting a lower earning capacity than that asserted by the plaintiff. Further, we find nothing of record which indicates that Dupre will not be able to work. In fact, Dr. John Cobb testified that he would be able to perform light duty work after neck surgery. Accordingly, we find no error in the trial court's award of future lost wages.

GENERAL DAMAGES
Dupre further argues that the general damage award was inadequate.
The Supreme Court, in the recent case of Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-1261 (La.1993) reiterated the standard of review for general damage award as follows:
In Reck v. Stevens, 373 So.2d 498 (La. 1979), this Court commented on appellate review of general damage awards and on the "much discretion" in fixing damages accorded to trial courts by La.Civ.Code art. 1934(3) (1870).2 The decision pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
In Reck, this court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974).
The standard for appellate review of general damage awards is difficult to express *1123 and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
The record reflects that Dupre had surgery on May 28, 1992, to remove a herniated disc at the L-45 level. Further, Dr. Cobb testified that Dupre also needed neck surgery, which had not, at that time, been performed only because payment had not been approved. Dr. Cobb testified that Dupre would need a year after the neck surgery to reach maximum recovery.
An award of $100,000 is low for a person with back and neck injuries requiring two surgeries and spanning three years. However, we cannot say that is so low as to be an abuse of the "vast" discretion vested in the trial court with regard to general damage awards.
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are to be divided between the parties.
AFFIRMED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.